**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**Charles Kenyatta Jr.,**
Plaintiff,

v.

**Sean Combs, Bad Boy Entertainment**
Defendants.

---

**COMPLAINT**

Plaintiff, Charles Kenyatta Jr., appearing pro se, files this Complaint against Defendants Sean Combs and Bad Boy Entertainment, and alleges as follows:

---

**PARTIES**

1. Plaintiff, Charles Kenyatta Jr., is the sole owner of Act BadEntertainment LLC and its associated trademarks "ACT BAD ENTERTAINMENT" and "ACT BAD," currently incarcerated at Collins Correctional Facility.

2. Defendant, Sean Combs, is an individual and owner of Bad Boy Entertainment, with an address of [Insert Address], who entered into the disputed contract.

---

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121, as this action involves claims under the Lanham Act, including trademark infringement, unfair competition, and breach of contract under state and federal law.

4. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and the Defendants conduct business in this district.

---

**STATEMENT OF FACTS**

5. Plaintiff, Charles Kenyatta Jr., is the registered owner of two trademarks with the United States Patent and Trademark Office (USPTO): "ACT BAD ENTERTAINMENT" and "ACT BAD." These trademarks are essential to Plaintiff's business operations and form the core of Plaintiff's brand identity, marketing, and commercial activities.

6. On or about June 1, 2023, Defendant Sean Combs, through his entertainment lawyer, Pamela Gurley, presented a contract to Plaintiff's entertainment lawyer, Andrew Covington, for Plaintiff's signature regarding the use of Plaintiff's "ACT BAD ENTERTAINMENT" trademark for merchandise and music projects.

7. Plaintiff, Charles Kenyatta Jr., was incarcerated at the time and did not sign the contract, nor did his Power of Attorney.

8. Despite the lack of consent or signature, Defendants moved forward as though the contract was validly executed, engaging in the sale of merchandise and public performance of the song "ACT BAD."

9. Plaintiff's lawyer raised concerns regarding several terms, including the absence of an upfront payment, the inclusion of provisions that were unfavorable to Plaintiff, and the need for changes to the contract.

10. Defendants ignored these concerns, and shortly after, Sean Combs performed the song "ACT BAD" publicly and began promoting and selling Act Bad Entertainment merchandise, using Plaintiff's trademarks without consent.

11. Defendants' unauthorized use of the "ACT BAD ENTERTAINMENT" and "ACT BAD" trademarks has caused confusion among the public as to the affiliation and ownership of the marks, leading to financial harm and reputational damage to Plaintiff's business.

12. In a separate case involving Defendant Sean Combs and Cassie Ventura, Combs was accused of sexual abuse and other misconduct, which resulted in a widely publicized settlement. The public's association of "ACT BAD" merchandise with Defendant's tarnished reputation has caused significant consumer aversion, leading to decreased sales of Plaintiff's merchandise.

13. Defendant Sean Combs also posted on social media platforms promoting the "ACT BAD" brand and merchandise, using hashtags and images associated with the brand, including Plaintiff's registered trademarks, without Plaintiff's consent.

14. Defendants have profited from the unauthorized use of Plaintiff's trademarks and continue to sell merchandise bearing the "ACT BAD" mark, all without Plaintiff's authorization.

---

**CLAIMS**

---

**Count I: Trademark Infringement under 15 U.S.C. § 1114**

15. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 14.

16. Plaintiff owns two valid trademarks: "ACT BAD ENTERTAINMENT" and "ACT BAD," which are entitled to protection under the Lanham Act.

17. Defendant Sean Combs knowingly and without Plaintiff's consent used Plaintiff's registered trademarks in commerce, including the promotion, sale of merchandise, and public performance of the song "ACT BAD."

18. Defendant's unauthorized use of the "ACT BAD ENTERTAINMENT" and "ACT BAD" trademarks is likely to cause confusion, mistake, or deception among consumers as to the source, affiliation, or sponsorship of the goods and services offered under these marks, in violation of the Lanham Act.

19. In *Morningside Group Ltd. v. Morningside Capital Group, LLC*, 182 F.3d 133 (2d Cir. 1999), the court emphasized that likelihood of confusion can exist even when the marks are not identical. Here, the use of "Act Bad" by Defendant Sean Combs is sufficiently similar to Plaintiff's "ACT BAD ENTERTAINMENT" and "ACT BAD" to cause confusion.

---

**Count I (Cont'd): The Protection of "ACT BAD ENTERTAINMENT"**

20. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 19.

21. Plaintiff owns both the trademarks "ACT BAD ENTERTAINMENT" and "ACT BAD." The fact that the word "Entertainment" is added to the latter does not negate or significantly alter the core of the trademark, "ACT BAD," which remains dominant and distinctive.

22. In *In re Mighty Leaf Tea*, 601 F.3d 1342 (Fed. Cir. 2010), the court held that adding generic or descriptive terms to a trademark does not necessarily create a distinct commercial impression. The dominant portion of the trademark remains the key focus for determining infringement. Here, the addition of "Entertainment" does not alter the distinctiveness or enforceability of "ACT BAD."

23. Similarly, in *A & H Sportswear Co. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3d Cir. 2000), the court found that minor variations in a trademark, such as the addition of descriptive terms, do not avoid liability for trademark infringement if the core of the mark remains similar and is likely to cause confusion. In this case, both "ACT BAD ENTERTAINMENT" and "ACT BAD" are sufficiently similar that consumers would associate both with the same source.

24. Furthermore, in *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 (9th Cir. 1999), the court ruled that adding a generic term such as "Entertainment" to a well-known mark does not significantly distinguish it from the original mark. Here, the inclusion of "Entertainment" is merely descriptive and does not detract from the fact that the dominant portion, "ACT BAD," remains protected.

25. Plaintiff's rights to both trademarks are further supported by *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000), where the court found that small changes to a trademark do not avoid infringement if the overall commercial impression of the marks remains the same. The dominant portion, "ACT BAD," continues to form the primary impression in both trademarks and therefore retains its full protection under the Lanham Act.

26. Thus, Plaintiff's trademark rights in "ACT BAD ENTERTAINMENT" are not diminished by the addition of "Entertainment," and any use of the "ACT BAD" mark, even if it appears as "ACT BAD ENTERTAINMENT," infringes upon Plaintiff's trademark rights.

---

**Count II: Unfair Competition under 15 U.S.C. § 1125(a)**

27. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 26.

28. Defendant Sean Combs engaged in unfair competition by misrepresenting his affiliation with Plaintiff's "ACT BAD ENTERTAINMENT" and "ACT BAD" trademarks and using them in a manner that caused confusion among the public.

29. The negative publicity surrounding Defendant Sean Combs' misconduct has led to consumer reluctance to associate with or purchase merchandise bearing the "ACT BAD" mark, further damaging Plaintiff's business and reputation.

30. This negative association has diluted the distinctiveness of Plaintiff's trademarks, aligning with the principles in *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97 (2d Cir. 2009), which recognized that unauthorized use of a mark can cause harm to its distinctiveness.

---

**Count III: Trademark Dilution under 15 U.S.C. § 1125(c)**

31. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 30.

32. Plaintiff's trademarks "ACT BAD ENTERTAINMENT" and "ACT BAD" are well known in their respective markets, and their association with Defendant Sean Combs, especially in light of the negative publicity surrounding the Cassie Ventura case, has diluted the reputation and value of Plaintiff's marks.

33. Defendant's misconduct has caused consumers to avoid purchasing products under the "ACT BAD" brand due to its association with Defendant's scandal, which has caused long-term harm to the value of Plaintiff's trademarks.

---

**Count IV: Breach of Contract under NY Law**

34. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 33.

35. No valid contract was executed by Plaintiff due to his incarceration, and the contract required Plaintiff's consent, which was not provided.

36. Under *Williams v. Walker-Thomas Furniture vs Furniture Co.*, 350 F.2d 445 (D.C. Cir. 1965), a valid contract requires mutual assent, which was absent here.

37. Defendants proceeded as though a valid contract existed, causing financial harm to Plaintiff.

38. The existence of a valid and enforceable written contract governing a particular subject matter ordinarily concludes recovery in contract under New York law. Defendants' failure to secure Plaintiff's consent prevents the enforceability of the purported contract.

---

**Count V: Conversion and Civil Theft under NY Law**

39. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 38.
40. Defendants exercised unauthorized control over Plaintiff's trademarks by profiting from the sale of merchandise and public performances associated with "ACT BAD ENTERTAINMENT" and "ACT BAD."
41. A conversion claim under New York law may succeed if the alleged wrong is distinct from any contractual obligation. Defendants' unauthorized use of Plaintiff's trademarks constitutes conversion and civil theft.
42. Defendants' actions have caused financial harm to Plaintiff by unlawfully appropriating the value and goodwill associated with Plaintiff's intellectual property.

---

**Count VI: Voidable Contracts under Principle and Agent Doctrine (NY Law)**

43. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 42.
44. Under New York law, a contract entered through an agent for both parties is voidable at the option of either party where the parties have no knowledge of the dual agency, and the agent has a discretionary role. Defendants failed to properly execute a valid contract, rendering the purported contract voidable under the principle-agent doctrine.

---

**Count VII: Void Contracts under the Statute of Frauds (NY Law)**

45. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 44.
46. Under the New York Statute of Frauds, any contract that fails to meet the necessary formalities is void. Defendants' failure to secure Plaintiff's consent renders the purported agreement void under the Statute of Frauds.

---

**DAMAGES**

47. As a result of Defendant Sean Combs' infringement and misconduct, Plaintiff has suffered financial harm, including but not limited to:
48. Lost revenue from diminished sales of merchandise associated with the "ACT BAD" brand.
49. Decreased market value of the "ACT BAD ENTERTAINMENT" and "ACT BAD" trademarks due to their association with Defendant Sean Combs' tarnished public image.

50. Emotional distress and reputational harm.
51. Additional costs associated with mitigating the damage to Plaintiff's brand.
52. Plaintiff estimates the total compensatory damages for lost revenue and reputational harm at $5 million.
53. Plaintiff seeks punitive damages of $3 million for Defendants' willful and bad-faith infringement.
54. Plaintiff seeks damages for trademark dilution at $2 million, and additional damages for emotional distress at $1 million.

---

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. A declaratory judgment that Defendants' actions constitute trademark infringement, unfair competition, and trademark dilution under federal law.
2. An order enjoining Defendants from further use of Plaintiff's "ACT BAD ENTERTAINMENT" and "ACT BAD" trademarks without authorization.
3. Compensatory damages in the amount of $5 million.
4. Punitive damages in the amount of $3 million.
5. Damages for trademark dilution in the amount of $2 million.
6. Additional damages in the amount of $1 million for emotional distress.
7. Prejudgment and post-judgment interest.
8. Attorney's fees and costs.
9. For such other and further relief as the Court may deem just and proper.

---

**Dated:** September 6, 2024
**Location:** Collins, NY

**Respectfully submitted,**

**Charles Kenyatta Jr. 22B3002**
**Pro-Se Claimant**
**Collins Correctional Facility**
**PO Box 340**
**Collins, NY 14034-0340**

# EXHIBIT A

CONTRACT

Certificate of Engagement and Release

This agreement is entered into as of May 26, 2023, between Khalfani Gourick and Charles Kenyatta Jr., each c/o The Covington Law, 2201 Wisconsin Ave NW #305, Washington, DC 20007, Attn: Andrew Covington (individually and collectively, jointly and severally, "you" or "your"), on the one side, and Bad Boy Part 4, LLC, c/o Tri Star Sports and Entertainment Group, 9255 Sunset Blvd., 2d Floor, West Hollywood, CA 90069, Attn: Lou Taylor ("Label", "we", "us" or "our"), on the other side. You and we may be referred to herein as the Parties and each a Party. For good and valuable consideration, the receipt and sufficiency of which you hereby acknowledge, the Parties agree as follows:

1. You have advised us that you rendered services and/or are otherwise entitled to compensation in respect of the sound recording titled "Act Bad" featuring the artists professionally known as Diddy, City Girls and Fabolous (individually and collectively, "Artists"), which was initially released by Label on or about May 26, 2023 (the "Recording"). The Parties hereby desire to resolve any and all outstanding matters related to the Recording and/or otherwise existing between them.

2. (a) As full and complete consideration for your services in respect of the Recording and the rights and releases granted in this agreement, Label will pay you: (i) ten percent (10%) (i.e., five percent [5%] to each of Gourick and Kenyatta) of our net profits solely and directly attributed to the sale and/or other exploitation by us of the Recording and music video therefor and/or (ii) fifteen percent (15%) (i.e. seven and one-half percent [7.5%] to each of Gourick and Kenyatta) of our net profits solely and directly attributed to the sale and/or other exploitation by us of any physical merchandise (t-shirts, hats, etc.) bearing the title "Act Bad" (collectively, the "Royalty"). As used herein, "net profits" means revenue earned and actually received by us less returns, credits, rebates or other customary adjustments and less any and all costs and expenses paid and/or incurred by us and/or our affiliates, including, without limitation: royalties and/or fees payable to Artists, labels, producers, mixers, publishers, writers, sample owners and/or other participants; distribution fees; recording costs; video production costs; artwork costs; marketing costs; manufacturing, shipping and distribution costs; and/or any other costs and expenses which we and/or our affiliates have paid and/or incurred and/or reasonably expect to pay and/or incur in connection with the Recording and/or any such merchandise. Notwithstanding the foregoing, "net profits" does not include the so-called label share or master owner share of SoundExchange or public performance income or any income in respect of blanket licenses of our catalog.

(b) We shall pay, or instruct our distributor to pay, any Royalty becoming payable to you hereunder. The Royalty will be payable one-half (1/2) to Gourick and one-half (1/2) to Kenyatta. Subject to our receipt of this agreement signed by each of you and us, the confidentiality agreement signed by each of you and all necessary payee documentation, any Royalty payable hereunder will be paid on a semi-annual basis (within three [3] months following June 30 and December 31 or such other semi-annual interval as we determine). We shall send any Royalty payable hereunder (or Gourick's and Kenyatta's respective shares thereof) to the address set forth above or via wire or ACH as directed by Gourick and Kenyatta or their representative. In calculating the Royalty, we shall have the absolute right to rely on accounting statements received by us from our distributor and we shall not be responsible for any error, omission or other inaccuracy in any such statement from our distributor. You are responsible for payment of any and all taxes required to be paid in connection with the Royalty.

3. The Material is a "work-made-for-hire" for Label within the meaning of the Copyright Act of 1976 (Title 17, U.S.C.), as amended. Label is the exclusive owner of all right, title and interest in and to the Material (including copyrights and renewals and extensions), throughout the universe in perpetuity, in all media now or hereafter created. If all or any portion of the Material is determined not to be a "work-made-for-hire", you hereby irrevocably and exclusively assign to Label all right, title and interest in and to the Material, throughout the universe in perpetuity, in all media now or hereafter created. Without limiting the foregoing, we and our licensees, designees and/or assigns will have the exclusive unrestricted right, throughout the universe in perpetuity, via all media now or hereafter created, to edit, distribute, perform, print, sell, license, merchandise, record, stream, broadcast, promote and/or otherwise exploit the Material (in whole and/or in part, alone and/or with other materials). This agreement is not subject to any union or guild agreement and you are not entitled to any union or guild payments; if any such agreement is determined to apply, any payments required thereunder will be at minimum scale and applied against any compensation received by you hereunder. You forever waive, throughout the universe in perpetuity, any and all moral rights in and/or to the Material for all media now or hereafter created and any rights and/or remedies in equity related to this agreement, including without limitation, to rescind any rights granted and/or enjoin the exploitation of any Material. You will not use any Material, without Label's prior written consent. As used herein, "Material" means the Recording, music video for the Recording, any reproductions and/or derivatives of the foregoing and the results and proceeds of your services related thereto.

4. You warrant, represent and agree that: (a) you have not contributed and will not contribute to the authorship of any of the selections or musical compositions embodied in the Material (the "Subject Compositions"), that you shall not at any time make any claim of ownership and/or authorship in or to such Subject Compositions and that you shall not at any time make any claim to any financial interest or participation in connection with the exploitation of such Subject Compositions; and (b) you will not render any services with respect to any recording embodying, in whole or in part, any Subject Compositions for any third party prior to the date three (3) years after the Recording has been initially commercially released in the United States.

5. You further warrant, represent and agree that: (a) you have the full right, power and authority to enter into this agreement and to grant the rights and releases granted herein; (b) except for payment to you of any Royalty which may be payable hereunder, neither we nor any other Releasees will have any obligation to make any payment to you or to any third party in connection with the subject matter of this agreement; (c) the Material will not violate or infringe any law or any third-party rights, including without limitation, copyright, trademark, contract, privacy and/or publicity; and (d) no action or proceeding has been commenced concerning the matters released herein and you have not granted and/or assigned to any third party any rights with respect to the Material and/or any of the

matters released herein. You will indemnify, defend and hold harmless Label and the other Releasees from and against all claims, loss, damages, liabilities, costs and expenses (including, without limitation, attorneys' fees) (collectively, "Claim") in connection with the services, any breach or alleged breach of any representations, warranties or agreements hereunder and/or any other acts or omissions of you. Pending resolution of any such Claim, we will have the right to withhold any monies which may be payable hereunder.

6. (a) You (on behalf of you, your related entities and the respective heirs, executors, administrators, predecessors, successors, parents, subsidiaries, affiliates, related entities, principals, officers, directors, employees, licensees and assigns of you and each such entity) (collectively, "Releasors") forever release and discharge us, Artist, their respective related entities and the respective heirs, executors, administrators, predecessors, successors, parents, subsidiaries, affiliates, related entities, principals, officers, directors, employees, artists, labels, distributors, licensees and assigns of us, Artist and their related entities (collectively, "Releasees") from any and all claims, demands, actions, suits, sums of money, accounts, covenants, agreements, contracts and promises in law or in equity, which you now have, have had, or at any time may have, against us, Artist or any other Releasees, whether or not they have been subject to dispute or otherwise and whether known or unknown to you, by reason of any matter, cause or thing whatsoever from the beginning of time to the date hereof.

(b) You acknowledge that you intend this agreement as a full and final accord and satisfaction and release of every matter in paragraph 2(a) above and you are familiar with Section 1542 of the Civil Code of California, which provides:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or releasing party".

You waive and relinquish any right and benefit which you may have under Section 1542 to the extent that you may lawfully do so in connection with the subject matter hereof. The foregoing is not an acknowledgement that California law applies. This agreement is the result of compromise between the Parties and not an admission as to any matter herein.

7. We will not be in breach of this agreement unless we fail to cure any alleged breach within thirty (30) days after receipt of written notice from you describing the alleged breach.

8. All notices under this agreement will be in writing and sent by personal delivery, recognized overnight courier service or registered or certified mail (return receipt requested), all charges pre-paid, to the Party's attention at the address set forth above (or at such other address as a Party may notify the other Party in writing sent by any of the above delivery methods), with a copy simultaneously sent to Grubman Shire Meiselas & Sacks, P.C., 152 W 57th St., 31st Floor, New York, New York 10019, Attn. Kenneth Meiselas, Esq.

9. This agreement has been entered into in the State of New York and its validity, interpretation and legal effect will be governed by the laws of the State of New York applicable to contracts entered in and performed entirely therein, without regard to choice of law. Any claim and/or dispute relating to this agreement (including, without limitation, contract, tort and/or scope of this arbitration provision) will be determined by confidential arbitration administered by the American Arbitration Association before one (1) arbitrator in New York, New York. You will not have a right to a jury trial. Judgment on the arbitration award may be entered by a court having jurisdiction. You consent to personal jurisdiction of such arbitration forum and waive objection based on personal jurisdiction, venue and/or inconvenient forum.

10. You agree that this agreement is confidential and neither you nor your advisors will disclose the terms thereof. Simultaneously with the execution hereof, you will sign and return to Label the confidentiality agreement attached hereto as Exhibit A.

11. You may not assign this agreement; any purported assignment will be null and void. Label may assign this agreement in whole or in part to any person or entity. This agreement (including Exhibit A) is the entire understanding between the Parties with respect to the subject matter hereof. If any provision of this agreement is unenforceable, it will be deemed modified to the least extent necessary to be enforceable and, with all other provisions, will continue in full force and effect. This agreement otherwise will not be modified except in a written document signed by you and Label. Delivery of a signature by scan/email or recognized digital signature (e.g., DocuSign) will be effective as an original.

12. You acknowledge: (a) you reviewed this agreement with your legal counsel or knowingly declined the opportunity to do so; (b) your failure to review this agreement with your legal counsel will not impair the legally binding nature of this agreement; and (c) you fully read, understand and voluntarily accept all of the terms and conditions of this agreement.

**BAD BOY PART 4, LLC**

______________________________

**ACCEPTED AND AGREED:**

______________________________

Khalfani Gourick

______________________________

Charles Kenyatta Jr.

Exhibit A: Confidentiality Agreement

This confidentiality agreement ("NDA"), dated as of May 26, 2023, is made by the undersigned Khalfani Gourick and Charles Kenyatta Jr. For good and valuable consideration (including the opportunity to render services related to Bad Boy Part 4, LLC ["Label"] and/or Sean Combs ["Artist"] and/or to access information, material and/or areas related to Label and/or Artist) (collectively "Consideration"), the receipt and sufficiency of which the undersigned hereby acknowledges, the undersigned irrevocably agrees:

1. As used in this NDA: (a) "You" or "you" means: the undersigned; each entity the undersigned owns and/or controls; the undersigned's and their respective parents, subsidiaries, affiliates, successors, assigns, officers, directors, members, employees, contractors, managers, agents and representatives; and the undersigned's estate, heirs, executors and administrators; and (b) "Artist Parties" and each an "Artist Party" means Label, Artist and/or any person or entity affiliated and/or associated with Label and/or Artist, whether personally and/or professionally, including without limitation: Artist's family members and/or relatives; Artist's prior, current and/or future spouse, partner and/or significant other; and Artist's friends, guests, entertainment and/or business associates, employees, managers, legal counsel and/or accountants.

2. You hereby irrevocably acknowledge and agree that the privacy of Label and Artist is highly valued and that:

(a) You will maintain as confidential and will not at any time, directly or indirectly, use, disclose, disseminate and/or exploit any information and/or material acquired by you at any time that concerns and/or relates directly or indirectly to any Artist Party and/or the conduct, statements, personal life, health, entertainment activities, business activities and/or financial affairs of any Artist Party, including, without limitation, the terms and conditions of this NDA. All such information and material (including, without limitation, photographs, films, recordings, documents and other material), whether prepared or otherwise acquired by you, will be maintained by you as confidential, private, secret and sensitive and will be Label's and/or Artist's sole and exclusive property.

(b) Without limiting the foregoing, you will not and will not authorize or assist any third party to: (i) photograph, film, record, broadcast, stream, transmit and/or otherwise document any sound, likeness and/or activities of any Artist Party, whether personal, professional or otherwise; and/or (ii) participate in any interviews, write or prepare any books or articles, confirm and/or deny any information, make any other remarks, use any likeness and/or create any other materials (including, without limitation, for print and/or broadcast media), which relate to any Artist Party. You will not make any statements and/or engage in any acts and/or omissions (including, without limitation, on social media), which defame, disparage, injure and/or reflect negatively upon any Artist Party.

(c) All information and material in paragraphs 2(a)-(b), whether or not publicly disclosed, will be "Prohibited Material". You irrevocably transfer and assign to Label all right, title and interest in and to all Prohibited Material (including copyrights) throughout the universe in perpetuity. Upon Label's request, you will immediately deliver to Label (and, if Label requests, thereafter will not retain) all materials and copies thereof in your possession and/or control constituting or containing Prohibited Material (including, without limitation, files on computers or mobile devices) and/or otherwise belonging to Label and/or Artist.

3. You acknowledge and agree: (a) if you breach or threaten to breach paragraph 2, the applicable Artist Party will suffer irreparable harm which cannot be adequately compensated by an award of monetary damage; and (b) in addition to all other rights or remedies, such Artist Party will be entitled to injunctive relief, recovery of monies gained by you from such breach and punitive damages. You will execute any documents reasonably requested by any Artist Party to further evidence or effectuate the rights set forth in this NDA.

4. The confidentiality obligations above will continue for life of Artist plus twenty (20) years (or seventy (70) years if longer). This NDA is a condition precedent to render services and/or to access information, material and/or areas related to Label and/or Artist.

5. You warrant and represent: (a) you have the full right, power and authority to enter into this NDA; and (b) the execution, delivery and/or performance hereof will not conflict with any other agreement to which you are bound. You will indemnify, defend and hold harmless the Artist Parties from and against all claims, loss, damages, liabilities, costs and expenses (including attorneys' fees) in connection with any breach or alleged breach of your representations, warranties or agreements and/or any acts or omissions of you.

6. This NDA has been entered into in the State of New York and its validity, interpretation and legal effect will be governed by the laws of the State of New York applicable to contracts entered in and performed entirely therein, without regard to choice of law. Any claim and/or dispute relating to this NDA (including, without limitation, contract, tort and/or scope of this arbitration provision) will be determined by confidential arbitration administered by the American Arbitration Association before one (1) arbitrator in New York, New York. You will not have a right to a jury trial. Judgment on the arbitration award may be entered by a court having jurisdiction. You consent to personal jurisdiction of such arbitration forum and waive any objection based on personal jurisdiction, venue and/or inconvenient forum.

7. You may not assign this NDA; any purported assignment will be null and void. Label may assign this NDA in whole or in part to any person or entity. If any provision of this NDA is unenforceable, it will be deemed modified to the least extent necessary to be enforceable and, with all other provisions, will continue in full force and effect. This NDA otherwise will not be modified except in a written document signed by you and Label. Delivery of signature by scan/email or digital signature will be effective as an original.

8. You acknowledge: (a) you reviewed this NDA with your legal counsel or knowingly declined the opportunity to do so; (b) your failure to review this NDA with your legal counsel will not impair the legally binding nature of this NDA; and (c) you fully read, understand and voluntarily accept all of the terms and conditions of this NDA.

**ACCEPTED AND AGREED:**

Signature: ______________________________ Signature: ______________________________

Print Name: Khalfani Gourick Print Name: Charles Kenyatta Jr.

**EXHIBIT B**

Email sent from Sean Combs a.k.a. Diddy attorney Pamela Gurley

16

Can we schedule a time to have a brief call? I would like to connect with you and bring you up to speed with my clients stance in this matter.

Best,

Andrew Covington

<~WRD0004.jpg>

Covington Law, PLLC

7000 Harps Mill Rd. Ste. 102 Raleigh, NC 27615

2201 Wisconsin Ave NW #305, Washington, DC 20007
Phone (202) 679-4025
Email: andrew@thecovingtonlaw.com
www.thecovingtonlaw.com

Information contained in this electronic message is attorney-client privileged and confidential information and/or work product, and is intended only for the use of the individual or entity named above. If you are not the intended party of this transmission, you are hereby notified that any use, distribution, dissemination, copying or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Andrew Covington at (202) 679-4025 or by return email and cease and desist from making any reproductions and/or distributions, purge this communication, and destroy any copies, electronic, paper or otherwise, which you may have of this communication.

IRS Circular 230 Required Disclosure: This communication is not a tax opinion. To any extent it contains tax advice, it is not intended or written for purposes by the practitioner to be used, and cannot be used by the taxpayer, for the purposes of avoiding tax penalties that may be imposed on the taxpayer by the Internal Revenue Service.

<~WRD0004.jpg> Sender notified by Mailtrack

<~WRD0004.jpg>

On Thu, Jun 1, 2023 at 2:10 PM Pamela Gurley <pgurley@gispc.com> wrote:

Hi Andrew – We are outside counsel for Bad Boy.

We understand your clients will be participating on the record "Act Bad". Attached is a short agreement addressing their participation.

Once you've reviewed, please let us know if you have any questions.

Thanks and reserving rights.

7000 Harps Mill Rd. Ste. 102 Raleigh, NC 27615

2201 Wisconsin Ave NW #305, Washington, DC 20007
Phone (202) 679-4025
Email: andrew@thecovingtonlaw.com
www.thecovingtonlaw.com

Information contained in this electronic message is attorney-client privileged and confidential information and/or work product, and is intended only for the use of the individual or entity named above. If you are not the intended party of this transmission, you are hereby notified that any use, distribution, dissemination, copying or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Andrew Covington at (202) 679-4025 or by return email and cease and desist from making any reproductions and/or distributions, purge this communication, and destroy any copies, electronic, paper or otherwise, which you may have of this communication.

IRS Circular 230 Required Disclosure: This communication is not a tax opinion. To any extent it contains tax advice, it is not intended or written for purposes by the practitioner to be used, and cannot be used by the taxpayer, for the purposes of avoiding tax penalties that may be imposed on the taxpayer by the Internal Revenue Service.

On Thu, Jul 6, 2023 at 2:00 PM Pamela Gurley <pgurley@gispc.com> wrote:

Thanks – Adding Megan to provide dial in #

**From:** Andrew Covington <andrew@thecovingtonlaw.com>
**Sent:** Thursday, July 6, 2023 12:36 PM
**To:** Pamela Gurley <pgurley@GISPC.COM>
**Subject:** Re: Bad Boy w Gourick & Kenyatta

3pm is fine. Thank you!

Best,

Andrew C. Covington, Esq.

2201 Wisconsin Ave NW #305, Washington, District of Columbia 20007

Phone: (202) 679-4025

www.thecovingtonlaw.com

On Jul 5, 2023, at 8:20 PM, Pamela Gurley <pgurley@gispc.com> wrote:

Hi – Does 2pm or 3pm ET work?





**From:** Andrew Covington <andrew@thecovingtonlaw.com>
**Sent:** Wednesday, July 5, 2023 3:52 PM
**To:** Pamela Gurley <pgurley@GISPC.COM>
**Cc:** Megan O'Brien <mobrien@gispc.com>
**Subject:** Re: Bad Boy w Gourick & Kenyatta

Hey Pamela,

Thanks for getting back to me. I have availability Thursday afternoon also. What time works for you?

Best,

Andrew C. Covington, Esq.

2201 Wisconsin Ave NW #305, Washington, District of Columbia 20007

Phone: (202) 679-4025

www.thecovingtonlaw.com

On Jul 5, 2023, at 2:41 PM, Pamela Gurley <pgurley@gispc.com> wrote:

Hi Andrew – I received your voice message today.
Apologies for delay, the email below was stuck in our filter.

Happy to schedule a time to speak. I'm available Thur aftn or we can look at next week.

Adding in Megan to assist.

Thanks.

---

**From:** Andrew Covington <andrew@thecovingtonlaw.com>
**Sent:** Wednesday, June 28, 2023 12:49 PM
**To:** Pamela Gurley <pgurley@GISPC.COM>
**Subject:** Re: Bad Boy w Gourick & Kenyatta

Good afternoon Pamela,



be used, and cannot be used by the taxpayer, for the purposes of avoiding tax penalties that may be imposed on the taxpayer by the Internal Revenue Service.

Sender notified by Mailtrack

On Thu, Jul 6, 2023 at 2:12 PM Andrew Covington <andrew@thecovingtonlaw.com> wrote:

Thanks, I'll be there.

Best,
Andrew Covington

Covington Law, PLLC
7000 Harps Mill Rd. Ste. 102 Raleigh, NC 27615
2201 Wisconsin Ave NW #305, Washington, DC 20007
Phone (202) 679-4025
Email: andrew@thecovingtonlaw.com
www.thecovingtonlaw.com

Information contained in this electronic message is attorney-client privileged and confidential information and/or work product, and is intended only for the use of the individual or entity named above. If you are not the intended party of this transmission, you are hereby notified that any use, distribution, dissemination, copying or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Andrew Covington at (202) 679-4025 or by return email and cease and desist from making any reproductions and/or distributions, purge this communication, and destroy any copies, electronic, paper or otherwise, which you may have of this communication.

IRS Circular 230 Required Disclosure: This communication is not a tax opinion. To any extent it contains tax advice, it is not intended or written for purposes by the practitioner to be used, and cannot be used by the taxpayer, for the purposes of avoiding tax penalties that may be imposed on the taxpayer by the Internal Revenue Service.

On Thu, Jul 6, 2023 at 2:09 PM Megan O'Brien <mobrien@gispc.com> wrote:

Hi Andrew,

Please find dial in information for your call today at 12pm PT/3pm ET below.

## Microsoft Teams meeting

**Join on your computer, mobile app or room device**

Click here to join the meeting