**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**Charles Kenyatta, Jr.,**
**Plaintiff,**

**v.**

**Sean Combs and Bad Boy Entertainment LLC,**
**Defendants.**

---

**Civil Action No. 1:24-cv-06923 (JGK)(GS)**

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT BAD BOY ENTERTAINMENT LLC'S MOTION TO VACATE CERTIFICATE OF DEFAULT**

**INTRODUCTION**

Plaintiff, **Charles Kenyatta Jr.**, respectfully submits this motion in opposition to Defendant Bad Boy Entertainment LLC's ("BBE") Motion to Vacate the Certificate of Default issued on October 31st, 2024. Plaintiff opposes BBE's motion on the following grounds:

1. The Court has personal jurisdiction over BBE, given BBE's significant contacts with New York and its contractual and business activities within the state.

2. BBE's contract proposal clearly acknowledged Plaintiff's ownership of the "ActBad" trademark, reinforcing Plaintiff's claims and underscoring BBE's awareness of Plaintiff's trademark rights.

3. Plaintiff complied with all reasonable service procedures in good faith, given his incarceration, and any minor errors in service did not prejudice Defendants, who received actual notice.

4. Defendants' reference to a previous state court filing is irrelevant to this federal case, which addresses interstate trademark infringement and falls within federal jurisdiction.

5. Granting default judgment is appropriate due to BBE's willful disregard for this Court's proceedings, failure to respond within the required timeframe, and pattern of evading service, which severely prejudices Plaintiff.

**Additionally,** Defendant's attorney filed the motion to vacate without a certificate of service, further failing to follow procedural requirements. Plaintiff also personally served Defendant's attorney by certified mail with a copy of the complaint and summons on October 18, 2024, ensuring proper notice. Plaintiff respectfully requests that the Court deny BBE's Motion to Vacate the Certificate of Default and proceed to enter default judgment.

**ARGUMENT**

**I. The Court Has Personal Jurisdiction Over Defendant BBE Due to Its New York Contacts and Contractual Provisions**

BBE has engaged in sufficient activities within New York to justify this Court's exercise of personal jurisdiction, including its contractual relationship with Plaintiff, use of a New York-based law firm, and specific choice-of-law and arbitration clauses.

**A. Contract Provisions Establish Jurisdiction**

The contract proposal, sent by BBE's attorney on May 26, 2023, expressly invokes New York law as the governing law and mandates arbitration in New York for disputes arising under the agreement. Courts routinely recognize that such choice-of-law and forum-selection clauses imply the defendant's consent to be bound by the jurisdiction of the selected forum.

- **Burger King Corp. v. Rudzewicz**, 471 U.S. 462, 472–73 (1985): The Supreme Court held that a choice-of-law provision can indicate a party's intent to purposefully avail itself of a forum's jurisdiction. By including a New York choice-of-law clause and selecting New York for arbitration, BBE demonstrated its intention to engage with New York law and jurisdiction in relation to disputes involving the "ActBad" brand.

- **M/S Bremen v. Zapata Off-Shore Co.**, 407 U.S. 1, 15 (1972): The Supreme Court upheld forum-selection clauses, emphasizing that parties may anticipate potential disputes and specify a particular forum to resolve them. This supports Plaintiff's argument that BBE intended New York to be the jurisdictional forum for contractual disputes, and thus, should not now argue lack of jurisdiction.

**B. BBE's Reliance on New York Legal Representation**

BBE designated Grubman Shire Meiselas & Sacks, P.C. in New York City as its primary legal contact, indicating BBE's reliance on New York-based legal resources to handle contract negotiations and address legal matters related to the "ActBad" brand. Courts have held that consistent use of local legal counsel can establish jurisdiction.

- **International Shoe Co. v. Washington**, 326 U.S. 310, 316 (1945): The Court emphasized that a party's reliance on a forum's resources can satisfy the minimum contacts necessary for personal jurisdiction. BBE's use of a New York law firm aligns with this precedent, as it demonstrates purposeful engagement with New York's legal and business resources.

- **McGee v. Int'l Life Ins. Co.**, 355 U.S. 220, 223 (1957): The Court held that even a single substantial connection with the forum state—such as retaining local legal counsel—can establish jurisdiction when it represents a meaningful engagement with the forum.

**C. Contractual Relationship with Plaintiff, a New York-Based Party**

BBE entered into a direct business relationship with Plaintiff, a New York resident, to negotiate royalties and profit-sharing related to "ActBad" branded merchandise and music. Courts have held

that business relationships with forum residents support personal jurisdiction, especially where the parties anticipate ongoing financial obligations.

- **Hanson v. Denckla**, 357 U.S. 235, 253 (1958): The Court held that personal jurisdiction is proper where a defendant deliberately engages in activities creating a continuing obligation with a resident of the forum state. Here, BBE's royalty obligations constitute an anticipated ongoing relationship with a New York resident, further supporting jurisdiction.

## II. BBE's Proposed Contract Acknowledges Plaintiff's Ownership of the "ActBad" Trademark

The contract proposal is explicit acknowledgment of Plaintiff's ownership rights in the "ActBad" brand, as BBE offered royalties in exchange for using the trademark in the "Act Bad" song and merchandise. Courts have consistently viewed such agreements as clear evidence of acknowledgment of a party's ownership rights.

### A. BBE's Proposal for Royalties Confirms Ownership

BBE's proposal offered Plaintiff 10% of net profits from the "Act Bad" recording and 15% of net profits from "Act Bad" merchandise sales. This offer underscores BBE's understanding that Plaintiff possessed legitimate ownership rights over the "ActBad" brand and demonstrates BBE's attempt to formally secure usage rights.

- **Fitzgerald Publ'g Co. v. Baylor Publ'g Co.**, 807 F.2d 1110 (2d Cir. 1986): The Second Circuit found that a request for permission to use a trademark signifies acknowledgment of the other party's rights. BBE's proposal to pay royalties here similarly confirms BBE's acknowledgment of Plaintiff's rights in "ActBad."

### B. Unauthorized Use of "ActBad" Song and Merchandise Before Agreement Shows Willful Disregard

BBE proceeded to release the "Act Bad" song and sell branded merchandise before Plaintiff's consent was secured, evidencing willful infringement and disregard for Plaintiff's rights. This unauthorized use led to:

- **Marketplace Confusion**: Consumers were led to believe that BBE held ownership over "ActBad," resulting in public confusion and harming Plaintiff's reputation and authority over his trademark.

- **Financial and Reputational Harm**: BBE's association with negative media coverage around the "ActBad" brand devalued Plaintiff's brand, resulting in lost revenue and diminished brand credibility.

### C. Trademark Priority

Plaintiff filed his application for the "ActBad" trademark on 11/23/201 and publication date was 8/22/2022, and it was officially registered in 9/26/2023 and "Act Bad Entertainment" trademark filed application was on 9/18/2021 and publication date was 8/2/2022 and it was officially registered in 2/20/2024, well before BBE's release of the song and merchandise. This establishes Plaintiff's priority rights over the "ActBad" brand, which BBE should have honored.

### III. Importance of Timely Response to Summons and Complaint within 21 Days

Under **Rule 12 of the Federal Rules of Civil Procedure**, a defendant is required to file an answer or otherwise respond to a summons and complaint within 21 days of being served. Failing to respond within this timeframe allows the plaintiff to seek a default judgment to avoid unnecessary delays and ensure that justice is not impeded by defendant's inaction.

- **New York v. Green**, 420 F.3d 99, 104 (2d Cir. 2005): The court emphasized that defendants are expected to respond within the specified period to avoid default. The timely response requirement is critical to preserving the integrity of judicial proceedings.

- **S.E.C. v. McNulty**, 137 F.3d 732, 738 (2d Cir. 1998): The court noted that the failure to respond timely can be construed as willful if it reflects a deliberate choice to ignore the judicial process. BBE's decision not to respond within 21 days, despite clear notice, shows deliberate neglect and justifies maintaining the default.

BBE had ample time to address any concerns about service or the summons but chose not to do so. This deliberate inaction undermines the principles of timely response and due process, meriting denial of the motion to vacate.

---

### IV. Granting Default Judgment Is Necessary to Prevent Further Prejudice to Plaintiff

Vacating the default would significantly prejudice Plaintiff, who has experienced financial losses, reputational harm, and public confusion as a result of BBE's unauthorized use of the "ActBad" brand. Allowing BBE to evade default would prolong the harm already inflicted on Plaintiff's brand and dilute the value of his trademark.

#### A. Willful Nature of BBE's Conduct

BBE's conduct throughout this process, including releasing the "Act Bad" song and merchandise before securing Plaintiff's consent, refusing to acknowledge Plaintiff's rights after being served, and failing to raise objections to service within the 21-day response window, underscores its willful disregard for Plaintiff's rights and the judicial process.

- **S.E.C. v. McNulty**, 137 F.3d 732, 738 (2d Cir. 1998): The Second Circuit noted that a default is willful if the defendant's conduct was egregious or showed deliberate neglect. BBE's actions—including disregarding service—demonstrate willfulness in failing to respond to the suit in good faith.

#### B. Prejudice to Plaintiff

Allowing BBE to delay these proceedings would extend Plaintiff's financial and reputational damages and diminish the value of his trademark. Plaintiff has a right to protect his brand against further unauthorized use, and any delay exacerbates the harm.

- **Davis v. Musler**, 713 F.2d 907, 916 (2d Cir. 1983): The court noted that vacating default causes prejudice if delay leads to a loss of evidence or complicates discovery. Plaintiff has suffered reputational harm and business losses that would worsen if default were vacated.

**V. Defendant Failed to File a Certificate of Service with Their Motion, Further Undermining Procedural Validity**

Under **Rule 5(d)** of the Federal Rules of Civil Procedure, a certificate of service must accompany any filed motion to confirm that the opposing party has been properly served. Here, Defendant's motion to vacate the default is deficient as it lacks the required certificate of service.

- **Importance of Certificate of Service**: Courts uphold strict adherence to Rule 5(d) to ensure all parties have notice of motions and filings. The lack of a certificate raises concerns about procedural compliance and transparency.

- **Effect on Defendant's Motion**: Without proof of service for their motion to vacate, Defendant's filing is procedurally deficient. This oversight reflects a lack of diligence in responding to this case, reinforcing the need for default judgment to avoid further delays and ensure proper procedure is followed.

**VI. Plaintiff Effectuated Service by Certified Mail on Defendant's Attorney**

Despite limitations due to incarceration, Plaintiff took all reasonable measures to ensure that Defendant BBE and its representatives were properly served with the summons and complaint. On **October 18, 2024**, Plaintiff sent the summons and complaint via certified mail to the address where Defendant's attorney, Jonathan D. Davis, has been handling BBE's correspondence.

- **Certified Mail Provides Reliable Proof of Delivery**: Certified mail offers both tracking and delivery confirmation, providing assurance that the documents were delivered to the address specified. Plaintiff's use of certified mail for service ensured that Defendant's legal representative received the necessary documents. Defendant's failure to acknowledge receipt at the time underscores a disregard for timely response rather than an issue with the address.

**VII. Plaintiff's Good Faith Compliance with Service Requirements Despite Incarceration**

Plaintiff made diligent efforts to serve Defendants in compliance with Rule 4, despite limitations imposed by incarceration. Plaintiff's Power of Attorney, his wife, obtained the summons from the e-filing system and delivered it to the process server on Plaintiff's instructions. Due to his inability to access the e-filing system, Plaintiff did not see that the summons lacked the clerk's signature and seal.

- **Certified Mail and Process Server**: Plaintiff served **Jonathan Davis by certified mail**, while **BBE was served by a process server**. The process server delivered documents (which included Summons, Complaint, to an administrative assistant at BBE's designated address, who verbally confirmed her authority to accept service for BBE.

- **Minor Error with Summons**: Plaintiff respectfully apologizes for the oversight regarding the unsigned summons and asserts that this minor error should not invalidate service. Courts have upheld service even where technical issues existed, so long as the defendant had actual notice of the suit. Here, Defendants received notice yet chose not to respond.

- **Case Support for Minor Service Defects**: In **AIG Managed Market Neutral Fund v. Askin Capital Mgmt., L.P.**, 197 F.R.D. 104 (S.D.N.Y. 2000), the court held that minor errors in service are not grounds for vacatur when the defendant had actual notice. BBE's receipt of the documents and their lack of timely response supports maintaining default.

**D. Detailed Affidavit of Service**

The process server's affidavit provides a thorough description of the individual who accepted service on behalf of BBE. The **Administrative Assistant** verbally confirmed her authority to receive the documents on behalf of BBE. This individual was described as a **gray-haired, white female, approximately 45-55 years old, 5'6"-5'8", 200-240 lbs, with glasses**, establishing the process server's diligence and accuracy.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Bad Boy Entertainment LLC's Motion to Vacate the Certificate of Default and proceed with entry of default judgment. BBE received adequate notice, acknowledged Plaintiff's trademark rights, and failed to demonstrate good cause. Denying vacatur protects Plaintiff's rights and upholds judicial efficiency.

---

**Dated:** 11/3/2024

*Charles Kenyatta Jr*

**Respectfully submitted,**

**Charles Kenyatta Jr.**
**Pro Se Plaintiff**