UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

Charles Kenyatta, Jr.,                              24-cv-6923 (JGK)

                              Plaintiff,            MEMORANDUM OPINION
                                                    AND ORDER

              - against -

SEAN COMBS and BAD BOY ENTERTAINMENT,
LLC,

                                        Defendants.
_____

JOHN G. KOELTL, District Judge:

     The plaintiff, Charles Kenyatta, Jr., brings this action

against defendants Sean Combs and Bad Boy Entertainment, LLC,

alleging that they infringed and misappropriated Kenyatta's

trademarks, "ACT BAD" and "ACT BAD ENTERTAINMENT."  Kenyatta

alleges various claims under the Lanham Act, 15 U.S.C. §§ 1051

et seq., along with several related state-law contract and tort

claims.

     This Court has federal-question jurisdiction over

Kenyatta's Lanham Act claims under 28 U.S.C. §§ 1331, 1338(a),

and 1338(b), and supplemental jurisdiction over his state-law

claims under 28 U.S.C. § 1367.  The defendants have moved to

dismiss Kenyatta's amended complaint for failure to state a

claim under Rule 12(b)(6).  Kenyatta separately moved for

partial summary judgment on his contract claim as well as for

preliminary injunction freezing the defendants' assets.

For the reasons set forth below, the defendants' motion to dismiss the amended complaint is **granted.**  Kenyatta's motions for partial summary judgment and a preliminary injunction are **denied.**

### I. Background[1]

Kenyatta allegedly owns the registered trademarks "ACT BAD" and "ACT BAD ENTERTAINMENT," Am. Compl. ¶ 5, and has used those marks "in connection with the sale of clothing, branded merchandise, and entertainment-related promotions," id. ¶ 6. Although Kenyatta does not specify when he began using the marks commercially, the USPTO issued registrations for ACT BAD, Registration No. 7,177,313, on September 26, 2023, and ACT BAD ENTERTAINMENT, Registration No. 7,310,999, on February 20, 2024.

In the spring of 2023, one of the defendants, Sean Combs, released a song titled "Act Bad."  Am. Compl. ¶ 7.  On June 1, 2023, the defendants' lawyer, Pamela Gurley, sent Kenyatta's entertainment lawyer, Andrew Covington, a draft contract proposing the terms under which the defendants could use the "ACT BAD" mark.  Id.  The proposed terms included "a percentage of net profits from" Combs's song and from merchandise sales. Id.  Covington and Gurley agreed on several terms but continued

---

[1] Unless otherwise indicated, the following facts are taken from the amended complaint and are accepted as true for purposes of deciding the defendants' motion to dismiss.

to negotiate key issues through the summer.  ECF No. 59-3 at 5–6; see also Am. Compl. ¶ 9 ("Plaintiff's attorney raised concerns about the contract, including the absence of an upfront payment.").

On August 17, Gurley sent Covington an email stating that her team was "still discussing" several of Covington's proposed changes, including his request to "double the rate on merch." ECF No. 59-3 at 7.  On September 6, 2023, Covington emailed Gurley, acknowledging that the parties were still engaged in "ongoing ... negotiations."  Id. at 8.  Despite their efforts, the parties ultimately "le[ft] unresolved key issues that prevented execution of the contract," Am. Compl. ¶ 8, and Kenyatta never signed the agreement, id. ¶ 9.

Even without a contract, Combs sold merchandise featuring the phrase "ACT BAD" and promoted his song "through interviews, features in prominent magazines, and other media appearances." Id. ¶¶ 10-11.  He also allegedly "made social media posts promoting the 'Act Bad' record," and "set his social media profile picture to the phrase 'ACTBAD.'" Id. ¶ 13.  In one promotional post, Combs referenced Kenyatta by Kenyatta's stage name, writing, "Shout out to Mr. Act Bad @charliecee."  Id.

For its part, Bad Boy Entertainment allegedly "actively participated in the planning, promotion, and sale of merchandise bearing the 'ACT BAD' mark," id. ¶ 19, and helped with

"marketing campaigns, product distribution, and the commercialization of 'ACT BAD,'" id. ¶ 20.  According to Kenyatta, the defendants' use of the phrase "Act Bad" "creat[ed] the false impression that 'Act Bad' is [Combs's] brand" and "led to widespread consumer and industry confusion, as individuals mistakenly associated the 'Act Bad' brand with Sean Combs."  Id. ¶ 11.

Kenyatta eventually brought this action against Combs and Bad Boy Entertainment in September 2024.  He moved to amend his complaint in February 2025, ECF No. 58, which the Court granted, ECF No. 60.  That same month, Kenyatta moved for partial summary judgment.  ECF No. 62.  And in May 2025, Kenyatta moved for a preliminary injunction.  ECF No. 94.

## II. The Defendants' Motion to Dismiss

The defendants move to dismiss Kenyatta's amended complaint in its entirety.  ECF No. 75.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).[2]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This Court accepts the allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). Although the Court must construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. Nor must the Court credit conclusory allegations. Id.

For purposes of a Rule 12(b)(6) motion, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). The Court may also consider judicially noticeable materials, including the official records of the United States Patent and Trademark Office (USPTO). Kaplan, Inc. v. Yun, 16 F. Supp. 3d 341, 345 (S.D.N.Y. 2014).

Although the Court may dismiss a frivolous complaint, the Court is obliged to construe pro se pleadings liberally, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to

raise the "strongest [claims] that they suggest," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original).  But the "special solicitude" in pro se cases, id. at 475, has its limits. To state a claim, pro se pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to allege facts showing that the pleader is entitled to relief.

With this standard in mind, the Court first addresses Kenyatta's Lanham Act claims, and then his state-law claims.

### A. Lanham Act

Kenyatta brings four claims under the Lanham Act: (1) trademark infringement under 15 U.S.C. § 1114(1) (Count I, Am. Compl. ¶¶ 48-58); (2) unfair competition under 15 U.S.C. § 1125(a)(1)(A) (Count II, Am. Compl. ¶¶ 83-86); (3) trademark dilution under 15 U.S.C. § 1125(c) (Count III, Am. Compl. ¶¶ 87-89); and (4) counterfeiting under 15 U.S.C. §§ 1114(1), 1116(d) and 1127 (Count IX, Am. Compl. ¶¶ 78-82).

### 1. Trademark Infringement and Unfair Competition

Kenyatta's first two claims are for trademark infringement and unfair competition, both under the Lanham Act.  "The Lanham Act was intended 'to make actionable the deceptive and misleading use of marks and to protect persons engaged in ... commerce against unfair competition.'"  Fed. Treas. Enter. Sojuzplodoimport v. SPI Spirits Ltd., 726 F.3d 62, 72 (2d

Cir. 2013) (alteration in original) (quoting <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763, 767-68 (1992)). "Toward this end, the Act provides separate causes of action for, among other things, infringement of registered and unregistered trademarks." <u>Id.</u>

Section 32 of the Lanham Act, 15 U.S.C. § 1114(1) — the trademark-infringement provision — protects only registered trademarks. It makes civilly liable any person who, without the trademark registrant's consent:

> use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ....

15 U.S.C. § 1114(1)(a).

By contrast, § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) — the unfair-competition provision — protects certain unregistered trademarks. It makes civilly liable any person who:

> on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ....

7

15 U.S.C. § 1125(a)(1)(A).

The analysis under the trademark-infringement and unfair-competition provisions of the Lanham Act is the same. <u>See</u> <u>Starbucks Corp. v. Wolfe's Borough Coffee, Inc.</u>, 588 F.3d 97, 114 (2d Cir. 2009) (identifying the same elements "[t]o prevail on a trademark infringement and unfair competition claim under 15 U.S.C. §§ 1114(1), 1125(a)"). To plead either claim, a plaintiff must adequately allege "(1) 'that it has a valid mark entitled to protection,' and (2) 'that the defendant's use of that mark is likely to cause confusion.'" <u>Sussman-Automatic</u> <u>Corp. v. Spa World Corp.</u>, 15 F. Supp. 3d 258, 266 (E.D.N.Y. 2014) (quoting <u>Juicy Couture, Inc. v. Bella Int'l, Ltd.</u>, 930 F. Supp. 2d 489, 498 (S.D.N.Y. 2013)).

### a. Trademark Infringement Under § 32

According to the defendants, Kenyatta's infringement claim fails at the threshold because he never alleges that the defendants used his marks after he registered them. MTD 17. The amended complaint fails to make that allegation.

The USPTO issued registrations for the "ACT BAD" and "ACT BAD ENTERTAINMENT" marks on September 26, 2023 and February 20, 2024. Yet the only conduct Kenyatta alleges by date was Gurley's June 2023 outreach about a potential contract. Am. Compl. ¶ 7. That was not an infringing use of the registered marks. Kenyatta responds that his complaint contains numerous

allegations that the defendants used his mark to sell
merchandise and promote his brand — "classic commercial use
causing confusion."  MTD Opp. 7.  But that misses the point — to
plead trademark infringement, Kenyatta still must allege that
the defendants used the registered trademark after he received
the registration.  See Sojuzplodoimport, 726 F.3d at 72
("Section 32(1) of the Act ... protects only registered
trademarks"); Sly Mag., LLC v. Weider Publ'ns L.L.C., 241 F.R.D.
527, 531 (S.D.N.Y. 2007) ("Plaintiff is unable to allege direct
infringement of its registered mark because there can be no
liability based on retroactive registration of a trademark.").
He has not done so.[3]

Because Kenyatta fails to allege when the defendants used
his marks, how they used his marks, and whether they did so
after he registered the marks, Kenyatta's trademark-infringement
claim (Count I) is **dismissed without prejudice.**

### b. Unfair Competition Under § 43(a)

Kenyatta next alleges unfair competition — essentially,
that the defendants misappropriated his marks even before he
registered them.  Section 43(a) protects an unregistered mark
"if it would qualify for registration."  Courtenay Commc'ns

---

[3] Kenyatta claims that the defendants' "unauthorized use of 'ACT
BAD' and 'ACT BAD ENTERTAINMENT' continued after the marks were
registered." MTD Opp. 10 (emphasis omitted).  But he cites no
facts to support that conclusory allegation.

Corp. v. Hall, 334 F.3d 210, 214 n.2 (2d Cir. 2003).  To plead
an unfair-competition claim — as with a trademark-infringement
claim — a plaintiff must adequately allege "(1) 'that it has a
valid mark entitled to protection,' and (2) 'that the
defendant's use of that mark is likely to cause confusion.'"
Sussman-Automatic, 15 F. Supp. 3d at 266 (E.D.N.Y. 2014)
(quoting Juicy Couture, 930 F. Supp. 2d at 498).  Kenyatta
ultimately registered his marks; therefore, the Court assumes
without deciding that he has satisfied the first step of the
inquiry and focuses on the second step.

    To determine whether a likelihood of confusion exists,
courts in the Second Circuit use the nonexclusive list of
factors outlined by Judge Friendly in Polaroid Corp. v. Polaroid
Electronics Corp., 287 F.2d 492 (2d Cir. 1961).  Those factors
are:

> (1) the strength of the plaintiff's mark[;] (2) the
> degree of similarity between the two marks; (3) the
> competitive proximity of the products or services;
> (4) the existence of actual confusion; (5) the
> likelihood that the plaintiff will 'bridge the gap'
> between the two markets; (6) the defendant's good faith
> in adopting its mark; (7) the quality of the defendant's
> product; and (8) the sophistication of the purchasers.

Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 256–57
(2d Cir. 1987) (quoting Polaroid, 287 F.2d at 495).

    Although Kenyatta insists in his opposition brief that each
of the Polaroid factors weighs in his favor, he points to no

10

factual allegations in his amended complaint supporting those
assertions.  The amended complaint is devoid of allegations
about what kind of merchandise the parties sold, let alone
whether the merchandise the defendants allegedly sold could
create a likelihood of confusion among consumers.  The closest
Kenyatta gets is his claim that "[c]onsumers have contacted
[him] under the mistaken belief that Sean Combs owns or is
affiliated with the 'ACT BAD' brand."  Am. Compl. ¶ 16.  But
even assuming these allegations "demonstrate confusion in the
general sense, '[n]o evidence links the confusion evinced by the
[complaints] to any potential or actual effect on customers'
purchasing decision.'"  Two Hands IP LLC v. Two Hands Am., Inc.,
563 F. Supp. 3d 290, 307 (S.D.N.Y. 2021) (quoting Sly Mag., LLC
v. Weider Publ'ns L.L.C., 529 F. Supp. 2d 425, 441 (S.D.N.Y.
2007)); see also The Sports Auth., Inc. v. Prime Hosp. Corp., 89
F.3d 955, 964 (2d Cir. 1996) ("To show actual confusion, [the
plaintiff] must demonstrate that [the defendants'] use could
inflict commercial injury in the form of either a diversion of
sales, damage to goodwill, or loss of control over
reputation.").

Kenyatta's other assertions — that he has pleaded "[s]trong
mark[s] used since 2018 across fashion and entertainment," that
Combs acted in "[b]ad faith," and that consumers in the relevant
industry are "[u]nsophisticated" and "likely to assume

affiliation," MTD Opp. 9 — are conclusory and unsupported by factual allegation in the amended complaint.  Indeed, the amended complaint states only that Kenyatta has used his marks "in commerce since at least [Insert Year] [sic]." Am. Compl. ¶ 6.

Kenyatta's unfair-competition claim (Count II) is therefore **dismissed without prejudice.**

## 2. Trademark Dilution

Kenyatta also brings claims for trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c).  "To prevail on a federal trademark dilution claim, a plaintiff must prove that (1) its mark is famous and distinctive, (2) its mark is used in commerce by the defendant, and (3) the defendant's use is likely to cause dilution through either 'blurring' or 'tarnishment.'" Boarding Sch. Rev., LLC v. Delta Career Educ. Corp., No. 11-cv-8921, 2013 WL 6670584, at *6 (S.D.N.Y. Mar. 29, 2013).

"The element of fame is the key ingredient" in a trademark-dilution claim "because, among the various prerequisites to a dilution claim, the one that most narrows the universe of potentially successful claims is the requirement that the senior mark be truly famous before a court will afford the owner of the mark the vast protections of the [Trademark Dilution Revision Act (TDRA), 15 U.S.C. § 1125(c)]." CDC Newburgh Inc. v. STM Bags, LLC, 692 F. Supp. 3d 205, 234 (S.D.N.Y. 2023).  "Courts in

this district have consistently construed the fame requirement to impose a heavy burden on parties seeking to assert a trademark dilution claim." Id.  "Only trademarks that enjoy such broad renown so as to at least approach (if not attain) the status of 'household names' may qualify as famous brands under federal law." Schutte Bagclosures Inc. v. Kwik Lok Corp., 193 F. Supp. 3d 245, 283 (S.D.N.Y. 2016) (collecting cases).

Kenyatta's sole allegation regarding the fame of his marks is that they "are well known in their respective markets." Am. Compl. ¶ 88.  As an initial matter, this kind of allegation is insufficient to state a trade-dilution claim.  "[T]he inclusion in the TDRA of the phrase 'widely recognized by the general consuming public of the United States' 'was intended to reject dilution claims based on niche fame, i.e.[,] fame limited to a particular channel of trade, segment of industry or service, or geographic region.'" CDC Newburgh, 692 F. Supp. 3d at 234 (quoting Luv N' Care, Ltd. v. Regent Baby Prods. Corp., 841 F. Supp. 2d 753, 757-58 (S.D.N.Y. 2012)).

Moreover, simply asserting that a product is famous will not suffice.  To state a trademark-dilution claim, a plaintiff must offer more than "spare, conclusory allegations that [the plaintiff's trademarks] are widely recognized by the general consuming public." Id. at 235.  A plaintiff must also plead "factual allegations concerning," for example, "its advertising

13

budget, similarity of fame to marks that courts have considered famous in the TDRA context, and the [number] of sales of goods offered under the mark." Id.  Kenyatta's amended complaint lacks any of these factual allegations.

Kenyatta counters that fame is a fact-intensive inquiry and that he should first get the opportunity to engage in discovery, which could ultimately bolster his claim.  MTD Opp. 9.  But future discovery cannot compensate for present pleading deficiencies.  Iqbal, 556 U.S. at 678-79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors for discovery for a plaintiff armed with nothing more than conclusions.").  Because Kenyatta has failed to allege any facts suggesting that his marks are famous, Kenyatta's trade-dilution claim (Count III) is **dismissed without prejudice.**

### 3. Counterfeiting

Kenyatta next brings a counterfeiting claim against the defendants.  "[C]ounterfeiting is the 'hard core' or 'first degree' of trademark infringement that seeks to trick the consumer into believing he or she is getting the genuine article, rather than a 'colorable imitation.'"  Gucci Am., Inc. v. Guess?, Inc., 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012) (citing 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:10 (4th ed. 1994)).  "For this reason, courts

have uniformly applied" the counterfeiting provision "to products that are stitch-for-stitch copies."  Id.

The Lanham Act defines a counterfeit mark as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.  The statute does not define the terms "spurious" and "substantially indistinguishable," but case law in our circuit has filled in the gaps.  A "spurious mark" is "one that is 'fake' and '[d]eceptively suggest[s] an erroneous origin.'"  Tiffany & Co. v. Costco Wholesale Corp., 971 F.3d 74, 95 n.18 (2d Cir. 2020) (alterations in original) (quoting Spurious, Black's Law Dictionary (11th ed. 2019)).  "To be substantially indistinguishable, two marks must be 'nearly identical ... with only minor differences which would not be apparent to an unwary observer.'"  Louis Vuitton Malletier S.A. v. Sunny Merch. Corp., 97 F. Supp. 3d 485, 499 (S.D.N.Y. 2015) (omission in original) (quoting Consol. Cigar Corp. v. Monte Cristi de Tabacos, 58 F. Supp. 2d 188, 196 (S.D.N.Y. 1999)).

Kenyatta alleges no facts suggesting that the defendants' marks are either spurious or substantially indistinguishable from his own marks.  The complaint lacks even a basic description of the plaintiff's marks, let alone images that would allow the Court to compare them with the defendants' marks.  While Kenyatta alleges that both marks used the phrase

15

"ACT BAD," that will not suffice to state a counterfeiting claim. "To establish counterfeiting in the case of a word mark, it cannot be enough that one word used in the allegedly offending mark is the same, with no reference to font, color, typeface, or context." GMA Accessories, Inc. v. BOP, LLC, 765 F. Supp. 2d 457, 472 (S.D.N.Y. 2011). Moreover, Kenyatta "makes no allegation that the products upon which the allegedly counterfeit mark was used were similar" to products he produces. Id. Therefore, the plaintiff's counterfeiting claim (Count IX) is **dismissed without prejudice.**

### B. State-law Claims

In addition to his federal Lanham Act claims, Kenyatta brings several claims under New York law. Specifically, he brings claims for breach of contract (Count IV, Am. Compl. ¶¶ 59-63), unjust enrichment (Count V, Am. Compl. ¶¶ 64-67), and conversion (Count VI, Am. Compl. ¶¶ 68-71). Kenyatta also purports to bring claims for "voidable contracts under principal and agent doctrine" (Count VII, Am. Compl. ¶¶ 72-74) and "void contracts under the statute of frauds" (Count VIII, Am. Compl. ¶¶ 75-77).

### 1. Breach of Contract

To state a claim for breach of contract under New York law, a plaintiff must allege "(1) the existence of a contract; (2) that the plaintiff has performed his or her obligations

16

under the contract; (3) that the defendant failed to perform his
or her obligations [under the contract]; and (4) that the
plaintiff was ... damaged" as a consequence.  Crowley v.
VisionMaker, LLC, 512 F. Supp. 2d 144, 151 (S.D.N.Y. 2007).

The defendants argue that Kenyatta has pleaded himself out
of court by alleging in his complaint that the parties never
agreed on certain key issues and that he never signed the
contract.  Am. Compl. ¶¶ 8-9.  In the defendants' view, these
allegations, rather than showing the existence of contract,
establish that none existed, particularly because the draft
contract Kenyatta attached to his complaint states expressly
that it is effective only if signed by the parties.  ECF
No. 59-2, Ex. 1 ¶ 2(b).  Kenyatta for his part responds that
"New York law allows contract formation through emails, agent
negotiations, and partial performance — especially in
entertaining and branding."  MTD Opp. 12.

In Winston v. Mediafare Entertainment Corp., 777 F.2d 78
(2d Cir. 1985), the Court of Appeals for "the Second Circuit,
applying New York law, articulated four 'factors that help
determine whether the parties intended to be bound in the
absence of a document executed by both sides.'"  Hallett v.
Stuart Dean Co., 481 F. Supp. 3d 294, 301 (S.D.N.Y. 2020)
(quoting Winston, 777 F.2d at 80).  Those factors are:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

Winston, 777 F.2d at 80.  The Court of Appeals for the Second Circuit has applied the Winston factors at the motion-to-dismiss stage.  Attestor Value Master Fund v. Republic of Argentina, 940 F.3d 825, 827 (2d Cir. 2019) (per curiam).

Even accepting Kenyatta's well-pleaded factual allegations as true and drawing all inferences in his favor, these factors weigh decisively against him.  As for the first factor, the draft contract Kenyatta attached to his amended complaint included an express reservation provision providing that the agreement would become effective only once the parties signed it.  ECF No. 59-2, Ex. 1 ¶ 2(b) ("Subject to our receipt of this agreement signed by each of you and us, the confidentiality agreement signed by each of you and all necessary payee documentation, any Royalty payable hereunder will be paid on a semi-annual basis ...."). As for the second factor, Kenyatta alleges no facts suggesting that the defendants partially performed; he alleges at most that Gurley sought to continue negotiating.  Am. Compl. ¶¶ 7-9.  As for the third factor, Kenyatta alleges outright that key terms remained to be negotiated.  Id. ¶ 8.  Although Kenyatta claims in his

opposition brief that entertainment and branding contracts are often executed "through emails, agent negotiations, and partial performance," MTD Opp. 12, he alleges nothing to that effect in his complaint.  And that allegation alone would not offset the remaining <u>Winston</u> factors that weigh against finding a binding contract.

Because Kenyatta's own allegations paired with the draft contract he attached to his amended complaint show that no contract existed, and because amendment would be futile, the plaintiff's breach-of-contract claim (Count IV) is **dismissed with prejudice.**

### 2. Unjust Enrichment

"To state a claim for unjust enrichment under New York law, a [p]laintiff must show that '(1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by [the p]laintiff.'"  <u>Bermudez v. Colgate-Palmolive Co.</u>, 667 F. Supp. 3d 24, 44 (S.D.N.Y. 2023) (quoting <u>Dwyer v. Allbirds, Inc.</u>, 598 F. Supp. 3d 137, 156 (S.D.N.Y. 2022)). Kenyatta claims that the defendants "profited from their unauthorized use of the 'ACT BAD' trademark, benefiting at [his] expense and without providing compensation or obtaining proper authorization," Am. Compl. ¶ 65, and that "[it] would be

inequitable to allow [the d]efendants to retain these profits,"
id. ¶ 67.

The defendants contend that Kenyatta fails to state an
unjust-enrichment claim because he merely duplicates his Lanham
Act and breach-of-contract claims and "makes no attempt to
differentiate" them.  MTD 22.  Kenyatta responds that he is
entitled to bring an unjust-enrichment claim in the alternative.
MTD Opp. 13.

Under New York law, "a plaintiff may plead unjust
enrichment in the alternative, but where an unjust enrichment
claim is duplicative of other causes of action, it should be
dismissed."  Bourbia v. S.C. Johnson & Son, Inc., 375 F. Supp.
3d 454, 466 (S.D.N.Y. 2019).  "Unjust enrichment is not a
catchall cause of action to be used when others fail" and "is
not available where it simply duplicates, or replaces, a
conventional contract or tort claim."  Patellos v. Hello Prods.,
LLC, 523 F. Supp. 3d 523, 536–37 (S.D.N.Y. 2021) (quoting
Corsello v. Verizon N.Y., Inc., 967 N.E.2d 1177, 1185 (N.Y.
2012)).  "An unjust enrichment claim is duplicative if it
'relies on the same conduct that forms the basis of [the
plaintiff's] other claims.'"  Bermudez, 667 F. Supp. 3d at 44
(alteration in original) (quoting Bourbia, 375 F. Supp. 3d
at 467); see also Patellos, 523 F. Supp. 3d at 536–38

(dismissing unjust-enrichment claim when it "essentially replicates" contract claims).

Kenyatta does not sufficiently distinguish his unjust-enrichment claim from his other legal claims, which all relate to the same factual allegations — that the "[d]efendants profited from their unauthorized use of the 'ACT BAD' trademark," Am. Compl. ¶ 65, particularly from "merchandise sales and branding," MTD Opp. 13.  These allegations "essentially replicate" his Lanham Act, breach-of-contract, and conversion claims.  See, e.g., Int'l Council of Shopping Ctrs., Inc. v. Info Quarters, LLC, No. 17-cv-5526, 2019 WL 2004029, at *4 (S.D.N.Y. May 7, 2019) ("Plaintiff has not made a showing for why the unjust enrichment claim is not duplicative of the Lanham Act claims — and courts in this circuit frequently dismiss unjust enrichment claims brought in Lanham Act cases.").

"[E]ven pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss [when the] plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action."  Nelson v. MillerCoors, LLC, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017).  Therefore, the plaintiff's unjust-enrichment claim (Count V) is **dismissed without prejudice.**

### 3. Conversion

Kenyatta next alleges that the defendants' "unauthorized control over [his] intellectual property" amounted to conversion. Am. Compl. ¶ 69. Conversion is "the denial or violation of the plaintiff's dominion, rights, or possession in specific, identifiable money or tangible personal property." Geler v. Nat'l Westminster Bank, 770 F. Supp. 210, 214 (S.D.N.Y. 1991).

New York, however, does not recognize a cause of action for trademark conversion. Lemonis v. A. Stein Meat Prods. Inc., No. 14-cv-3073, 2015 WL 997987, at *5 (E.D.N.Y. Mar. 6, 2015) ("[I]t is well settled, and quite easy to determine with minimal legal research, that there is no action for trademark conversion."); see also Ortega v. Burgos, No. 12-cv-5421, 2014 WL 2124957, at *1 (E.D.N.Y. May 22, 2014) (dismissing trademark conversion claim because "not only has this Court been unable to find any authority that recognizes trademark conversion[;] the leading treatise on trademark law states that[] '[e]very court to consider such a claim has rejected it.'" (quoting 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:9.50 (4th ed. 1994)).

Kenyatta responds by noting that the New York Court of Appeals has held that conversion claims can extend to intangible assets. MTD Opp. 12 (discussing Thyroff v. Nationwide Mut.

Ins., 864 N.E.2d 1272 (N.Y. 2007)).  The Court of Appeals
recognized in Thyroff that a conversion claim could apply to
"electronic records that were stored on a computer and were
indistinguishable from printed documents."  Thyroff, 864 N.E.2d
at 1278.  But the Court of Appeals did not purport to extend
conversion actions to all intangible property.  Indeed, it
observed that its holding applied only to the "type of
intangible property at issue in [that] case," and did "not
consider whether any of the myriad other forms of virtual
information should be protected by the tort."  Id.  Thyroff says
nothing to suggest that New York law recognizes trademark
conversion claims.  Kenyatta's conversion claim (Count VI) is
therefore **dismissed with prejudice.**

### 4. Additional Alleged Contract Claims

Kenyatta finally purports to bring claims for "voidable
contract under principle and agent doctrine" and "void contracts
under the statute of frauds."  Am. Compl. ¶¶ 72-77.
(capitalization omitted).  But voidness and voidability are not
causes of action — they are affirmative defenses to claims
sounding in contract.  See Yarusi v. S. Sedghi Inc., No. 14-cv-
7963, 2015 WL 4772761, at *2 (S.D.N.Y. Aug. 13, 2015) ("The
Statute of Frauds is an affirmative defense ....");  cf. also
Thomas v. Twitter Corporate Office, No. 22-cv-5341, 2023 WL
8452200, at *6 (S.D.N.Y. Dec. 6, 2023) (noting that "[i]llegal

contract is an affirmative defense, not a cause of action," and treating the plaintiff's claim as one for breach of the covenant of good faith and fair dealing (alteration in original)). Because Kenyatta's voidness and voidability claims are not claims at all and their defects cannot be rectified by amendment, Counts VII and VIII are **dismissed with prejudice.**

### III. Kenyatta's Motion for Partial Summary Judgment

After amending his complaint, but before the defendants moved to dismiss the amended complaint, Kenyatta moved for partial summary judgment on his contract claims. ECF No. 62. But for the reasons set forth above, Kenyatta has failed to state a claim for breach of contract. And in any event, factual questions about what exactly the parties agreed to, if anything, abound.

Additionally, a motion for summary judgment is premature. The defendants have not filed a responsive pleading, let alone had an opportunity to engage in discovery. See Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) ("[W]e cannot conclude that the parties had already had 'a fully adequate opportunity for discovery' when the district court granted summary judgment. ... '[T]he grant of summary judgment here was premature.'" (quoting Meloff v. N.Y. Life Ins., 51 F.3d 372, 375 (2d Cir. 1995))); see also Doe v. Trs. of Columbia Univ., No. 21-cv-5839, 2021 WL 4267638, at *1 (S.D.N.Y. Sept. 16, 2021)

("[C]ourts routinely deny motions for summary judgment as premature when discovery over relevant matters is incomplete or until the nonmoving party has had time to file a responsive pleading.").

Kenyatta's motion for partial summary judgment is therefore **denied without prejudice.**

### IV. Kenyatta's Motion for a Preliminary Injunction

Finally, Kenyatta moves for a preliminary injunction to freeze the defendants' assets during the pendency of this litigation.  ECF No. 94.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  Kenyatta fails to show that he has met any of these requirements.

As an initial matter, Kenyatta has not shown a likelihood of success on the merits.  As explained in detail above, he has failed to plead facts showing a plausible entitlement to relief for any of his claims.

Moreover, Kenyatta has failed to show that he would suffer irreparable injury in the absence of an injunction.  Kenyatta waited eight months after commencing this action and three

months after filing his amended complaint to seek emergency
relief.  See ECF No. 1 (filing initial complaint on September 6,
2024); ECF No. 59 (seeking leave to amend complaint on
February 3, 2025); and ECF No. 94 (moving for preliminary
injunction on May 19, 2025).  Courts in the Second Circuit
routinely deny motions for preliminary injunctions when movants
unduly delay in seeking relief.  See, e.g., Two Hands, 563 F.
Supp. 3d at 300 (denying motion for preliminary injunction when
plaintiff waited three months to seek relief); Silber v.
Barbara's Bakery, Inc., 950 F. Supp. 2d 432, 439 (E.D.N.Y. 2013)
("While delay does not always undermine an alleged need for
preliminary relief, months-long delays in seeking preliminary
injunctions have repeatedly been held by courts in the Second
Circuit to undercut the sense of urgency accompanying a motion
for preliminary relief.").  Kenyatta responds that his delay was
justified because he did not know Combs was indicted and facing
criminal trial and was thus unaware of the need to freeze his
assets.  ECF No. 99.  But that is implausible because Kenyatta
served process on Combs at the Metropolitan Detention Center.
ECF No. 25.

The balance of equities also favors the defendants.
Kenyatta seeks to enjoin the defendants and their agents,
employees, and representatives from transferring any assets.
Although the Court recognizes Kenyatta has some interest in

keeping the defendants' assets available in the event he succeeds in this litigation, that interest is dwarfed by the burden he seeks to place on the defendants.  To prevent the speculative possibility that Combs might exhaust all his assets during his ongoing criminal litigation, Kenyatta would prevent Combs from paying personal bills, from lawyers to necessities. That would not be equitable.

Finally, preliminary relief would not advance the public interest.  Kenyatta has not explained how freezing the defendants' assets would advance the public interest.

Because each <u>Winter</u> factor favors the defendants, Kenyatta's motion for a preliminary injunction is **denied.**

### V. Conclusion

For the foregoing reasons, the defendants' motion to dismiss Kenyatta's amended complaint is **granted.**  Counts I (trademark infringement), II (unfair competition), III (trademark dilution), V (unjust enrichment), and IX (counterfeiting) are **dismissed without prejudice.**  Counts IV (breach of contract), VI (conversion), VII (voidability), and VIII (voidness) are **dismissed with prejudice.**  Kenyatta's

motions for partial summary judgment and for a preliminary injunction are **denied**.

The Clerk is directed to close ECF Nos. 62, 75, and 94.

**SO ORDERED.**

Dated:    **New York, New York**
          **September 12, 2025**

                                        John G. Koeltl
                                **United States District Judge**