**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CHARLES KENYATTA, JR.,

                 Plaintiff,

      - against -

SEAN COMBS, ET ANO.,

                 Defendants.

---

24-cv-6923 (JGK)

<u>Memorandum</u>
<u>Opinion and Order</u>

**John G. Koeltl, District Judge:**

The plaintiff, Charles Kenyatta, brings this action against the defendants Sean Combs and Bad Boy Entertainment, LLC, alleging that they infringed and misappropriated Kenyatta's trademarks, "ACT BAD" and "ACT BAD ENTERTAINMENT." The defendants previously moved to dismiss the First Amended Complaint ("FAC") in this action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6); the Court granted that motion, dismissing Kenyatta's contract and conversion claims with prejudice and dismissing the remaining claims without prejudice. <u>Kenyatta v. Combs</u> (<u>Kenyatta I</u>), No. 24-cv-6923, 2025 WL 2636610 (S.D.N.Y. Sep. 12, 2025); <u>see also</u> Mem. Order, Sep. 12, 2025, ECF No. 105.

Kenyatta then filed a Second Amended Complaint ("SAC"), ECF No. 109, which the defendants again move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 112. For the following reasons, the defendants' motion is **granted in part** and **denied in part.**

## I.

The SAC repeats the bulk of the allegations contained in the FAC, which is described at length in Kenyatta I. See 2025 WL 2636610, at *1–2. The Court assumes familiarity with Kenyatta I. Unless otherwise noted, the following allegations are taken from the SAC and are accepted as true for purposes of deciding the current motion.

## A.

Kenyatta alleges that he owns the registered trademarks "ACT BAD" and "ACT BAD ENTERTAINMENT," SAC ¶¶ 11–12, and has used those marks to sell clothing and to promote entertainment-related services since at least 2020, id. ¶ 10. Kenyatta filed trademark-registration applications with the United States Patent and Trademark Office ("USPTO") for the marks "ACT BAD ENTERTAINMENT" and "ACT BAD" on September 18, 2021, and November 23, 2021, respectively. Id. ¶ 29. The USPTO issued a registration for the mark ACT BAD, Registration No. 7,177,313, on September 26, 2023, for use in clothing and apparel. SAC, Ex. 9 at 2, ECF No. 109-4. The USPTO issued a registration for the mark ACT BAD ENTERTAINMENT, Registration No. 7,310,999, on February 20, 2024, for use in entertainment, music, and media. Id. at 1.

In May 2023, one of the defendants, Sean Combs, released a song titled "Act Bad" and simultaneously began selling branded merchandise bearing the ACT BAD mark. SAC ¶ 16. Shortly before releasing the song "Act Bad," Combs published a post on his official Instagram account announcing the "Act Bad"

project. Id. ¶ 13. In that post, Combs expressly acknowledged Kenyatta "as the original Mr. ACT BAD."[1] Id.

Between June and September 2023, Combs's lawyers exchanged emails with Kenyatta's lawyers to discuss a proposed licensing arrangement for the "ACT BAD" mark. Id. ¶ 14. The defendants' lawyers acknowledged Kenyatta's ownership of the ACT BAD mark in those emails, which focused primarily on potential royalty terms. Id. The parties ultimately failed, however, to execute any agreement. According to Kenyatta, one of Combs's associates, who goes by "BK Rube," admitted to Kenyatta that he took someone named "Gourick" to the Bad Boy Entertainment office, where Gourick allegedly executed the contract on Kenyatta's behalf, but without Kenyatta's authorization. Id. ¶ 15. Kenyatta alleges that Gourick did so in exchange for cash and credit on Combs's album. Id. On September 20, 2023, "Combs and Gourick were seen and photographed performing together on stage the 'Act Bad' song." Id.

Since releasing the song "Act Bad" in May 2023, the defendants sold merchandise featuring the phrase "ACT BAD" and promoted Combs's song through interviews, features in prominent magazines, and other media appearances. Id. ¶¶ 16, 18. Combs also allegedly used the mark as part of a social media campaign promoting his song. As part of that campaign, Combs changed his profile image on his social-media accounts to "ACTBAD." Id. ¶ 30.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

The defendants continued to use the ACT BAD mark after Kenyatta's federal trademark registrations issued, including by selling merchandise through online retailers, promoting live events, and giving interviews during which Combs identified ACT BAD as his own brand. Id. ¶ 17. According to Kenyatta, the defendants' use of the phrase "Act Bad" has led consumers and industry professionals to contact Kenyatta "under the mistaken belief that ACT BAD is owned, sponsored, or controlled by Combs." Id. ¶ 20.

**B.**

Kenyatta eventually brought this action against Combs and Bad Boy Entertainment in September 2024. He moved to amend his complaint in February 2025, ECF No. 58, which the Court allowed, ECF No. 60. That same month, Kenyatta moved for partial summary judgment. Pl.'s Mot. Partial Summ. J., ECF No. 62. In April 2025, the defendants moved to dismiss the FAC. Defs.' Mot. Dismiss, ECF No. 75. And in May 2025, Kenyatta moved for a preliminary injunction. Pl.'s Mot. Preliminary Inj., ECF No. 94.

On September 12, 2025, the Court granted the defendants' motion to dismiss and denied Kenyatta's motions for partial summary judgment and for a preliminary injunction. The Court dismissed Kenyatta's contract and conversion claims with prejudice but granted him leave to replead his remaining claims. Kenyatta filed the SAC on September 18, 2025, and the defendants again moved to dismiss for failure to state a claim on October 10, 2025.

4

## II.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the Court should construe the facts alleged in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

Finally, when presented with a motion to dismiss a complaint, the Court may consider documents attached to or referenced in the complaint, documents either possessed or known about and relied on in bringing the lawsuit, or matters of which judicial notice may be taken. See Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016).

Although the Court may dismiss a frivolous complaint, the Court is obliged to construe pro se pleadings liberally, Harris v. Mills, 572 F.3d 66, 72

(2d Cir. 2009), and to interpret them to raise the "strongest [claims] that they suggest," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). But the "special solicitude" in pro se cases, id. at 475, has its limits. To state a claim, pro se pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to allege facts showing that the pleader is entitled to relief.

### III.

Kenyatta alleges the following six claims in the SAC: trademark infringement (Count I), SAC ¶¶ 27–29; unfair competition (Count II), id. ¶¶ 29–35; trademark counterfeiting (Count III), id. ¶¶ 36–43; "willful trademark infringement" (Count IV), id. ¶¶ 44–54; unjust enrichment/constructive trust (Count VI), id. ¶¶ 63–71; and declaratory judgment (Count VIII), id. ¶¶ 52–61.[2] The defendants move to dismiss each of these claims.

### A.

Kenyatta's first two claims are for trademark infringement and unfair competition, both under the Lanham Act. "The Lanham Act was intended 'to make actionable the deceptive and misleading use of marks and to protect persons engaged in commerce against unfair competition.'" Fed. Treas. Enter. Sojuzplodoimport v. SPI Spirits Ltd., 726 F.3d 62, 72 (2d Cir. 2013) (quoting Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 767–68 (1992)). "Toward

---

[2] The Court numbers the counts as Kenyatta does in the SAC. There is no Count V or VII.

this end, the Act provides separate causes of action for, among other things, infringement of registered and unregistered trademarks." Id.

Section 32 of the Lanham Act, 15 U.S.C. § 1114(1), protects only registered trademarks. It makes civilly liable any person who, without the trademark registrant's consent:

> use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . .

15 U.S.C. § 1114(1)(a).

By contrast, § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), protects certain unregistered trademarks. It makes civilly liable any person who:

> on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

15 U.S.C. § 1125(a)(1)(A).

The analysis under these two provisions is substantially the same. See Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 114 (2d Cir. 2009). To plead either claim, a plaintiff must adequately allege "(1) that it has a valid mark entitled to protection, and (2) that the defendant's use of that mark is

likely to cause confusion." <u>Sussman-Automatic Corp. v. Spa World Corp.</u>, 15 F. Supp. 3d 258, 266 (E.D.N.Y. 2014).

## 1.

The defendants argue that Kenyatta's trademark-infringement claim under § 32(a) must be dismissed for several reasons. None is persuasive.

### i.

The defendants first argue that Kenyatta's infringement claim fails at the threshold because, as with the FAC, the SAC never alleges that the defendants used Kenyatta's marks after he registered them. Mem. Supp. Mot. Dismiss ("Mot.") 7, ECF No. 113. But that is inaccurate.

Kenyatta registered the mark "ACT BAD" on September 26, 2023, and the mark ACT BAD ENTERTAINMENT on February 20, 2024. SAC ¶¶ 11–12. Kenyatta alleges that the defendants' "infringing activity continued after [his] federal registrations issued." <u>Id.</u> ¶ 17. He alleges, for example, that the defendants continued to promote and sell ACT BAD merchandise through online retailers and to use the mark as part of a social media campaign. <u>Id.</u>

The defendants dispute Kenyatta's allegations by challenging the accuracy of certain exhibits Kenyatta attached to the SAC in support of his infringement claim. For example, Kenyatta attached a screenshot from a YouTube video of a radio program, dated January 25, 2024, during which the hosts discuss this lawsuit. SAC, Ex. 18, ECF No. 109-8. The screenshot shows a person holding an image of an ACT BAD branded t-shirt. The defendants

8

contend, however, that "the image lacks attribution whether by source or date," and thus "fails to show whether the product is for sale." Mot. 8. Similarly, Kenyatta attaches a printout of a screengrab of an archived version of Diddy.com, which he contends shows ACT BAD merchandise for sale. SAC, Ex. 4 at 11, ECF No. 109-2. According to Kenyatta, the screengrab is dated January 19, 2025. Id. The defendants respond that January 19, 2025, is not the date of the content displayed on the website but the date on which the screengrab was printed. Mot. 8.

As an initial matter, the defendants' objections to the appropriate interpretation of the exhibits Kenyatta attached to the SAC present factual questions, which cannot be resolved at the motion-to-dismiss stage. At this point, the Court must credit the plaintiff's allegations and draw all reasonable inferences in his favor. But in any event, the plausibility of Kenyatta's infringement claim does not turn on the exhibits he attaches to the SAC. Unlike the FAC, which was silent on whether the defendants continued to use the marks after Kenyatta registered them, the SAC expressly alleges that the defendants continued to use the mark to sell merchandise and promote Combs's brand after Kenyatta registered his marks. See, e.g., SAC ¶ 17 ("Defendants' infringing activity continued **after Plaintiff's federal registrations issued.**"); id. ¶ 18 (noting that "Defendants were actively selling ACT BAD merchandise **months after Plaintiff's federal registration issued on September 26, 2023**, and while Plaintiff's trademark rights were being asserted."). These

allegations are sufficient to plead adequately that the defendants continued to use the ACT BAD mark after Kenyatta's registrations issued.

## ii.

The defendants next argue that Kenyatta's infringement claim fails because he has not adequately pleaded the existence of a likelihood of confusion. To determine whether a likelihood of confusion exists, courts in the Second Circuit use the nonexclusive list of factors outlined by Judge Friendly in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492 (2d Cir. 1961). Those factors are:

> (1) the strength of the plaintiff's mark[;] (2) the degree of similarity between the two marks; (3) the competitive proximity of the products or services; (4) the existence of actual confusion; (5) the likelihood that the plaintiff will 'bridge the gap' between the two markets; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the purchasers.

Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 256–57 (2d Cir. 1987) (quoting Polaroid, 287 F.2d at 495). Typically, "[a]pplying the Polaroid factors is fact-intensive, and resolving the likelihood of confusion on a motion to dismiss posture is not appropriate." Hermes Int'l v. Rothschild, 603 F. Supp. 3d 98, 106 (S.D.N.Y. 2022).

Kenyatta alleges that he has used the ACT BAD mark continuously since 2020; that "[b]oth parties offer apparel and operate in entertainment," SAC ¶ 32; that "[c]onsumers and industry professionals have contacted [Kenyatta] under the mistaken belief that ACT BAD is owned, sponsored, or

10

controlled by Combs," id. ¶ 20; and that the defendants lacked good faith in adopting the mark because Combs acknowledged as early as May 2023 that Kenyatta was the "**original Mr. ACT BAD**," id. ¶ 13.

The defendants insist that these allegations are inadequate. For example, they argue that Kenyatta's only allegation about the strength of his mark is that he has used it continuously since 2020. Mot. 15. They similarly argue that Kenyatta's allegation that both he and the defendants sold products bearing the ACT BAD mark in the "apparel" market is inadequate because he fails to identify the relevant product market with more specificity. But Kenyatta's burden at this stage is not to establish conclusively the existence of a likelihood of confusion; it is merely to plead factual allegations plausibly showing a likelihood of confusion. Kenyatta has alleged that he has a federally registered mark for ACT BAD, which he used to sell merchandise and apparel, and that the defendants sold apparel and promoted related events bearing the same phrase. Kenyatta has also alleged at least some facts pointing to the strength of the marks, the similarity of the competing marks, competitive proximity, actual confusion, and bad faith. These facts are sufficient to state a claim for trademark infringement.

### iii.

Next, the defendants argue that Kenyatta's infringement claim is barred by the First Amendment. The defendants note that they used Kenyatta's alleged mark in a song title, and "a song title, even one that incorporates

11

another's trademark, is not actionable infringement unless the title lacks artistic relevance to the work." Mot. 9.

At the outset, the defendants misstate the law. The Court of Appeals for the Second Circuit "has held that the First Amendment requires that trademark claims be construed narrowly in certain circumstances to avoid conflict with the freedom of expression." Viacom Int'l Inc. v. Zeus Networks, LLC, No. 25-cv-973, 2026 WL 861672, at *5 (S.D.N.Y. Mar. 30, 2026); see also Rogers v. Grimaldi, 875 F.2d 994, 998 (2d Cir. 1989). In Rogers, the Court of Appeals "established a two-prong balancing test to weigh the public interest in avoiding consumer confusion and the public interest in free expression." Down to Earth Organics, LLC v. Efron, No. 22-cv-6218, 2024 WL 1376532, at *3 (S.D.N.Y. Mar. 31, 2024). "The Lanham Act thus does not apply to an artistic work unless (1) the title has no artistic relevance to the underlying work whatsoever or (2) if there is some artistic relevance, the title explicitly misleads as to the source or the content of the work." Id. (emphasis added). A claim under the Lanham Act against an artistic work may thus survive, even if the title has artistic relevance to the underlying work, if the accused product is "seriously misleading."[3] Viacom, 2026 WL 861672, at *5.

---

[3] Because the defendants' First Amendment argument ultimately fails at the second step of Rogers, at least at this stage, the Court need not wade into the question whether Rogers applies to the defendants' merchandise rather than to the song itself. But if the defendants' use of the phrase "Act Bad" on their merchandise is source-identifying rather than expressive, Rogers would not apply at all. See Jack Daniel's Props., Inc. v. VIP Prods. LLC, 599 U.S. 140, 153 (2023) (holding that Rogers does not apply "when an alleged infringer uses

The defendants argue that Combs's song title has artistic relevance to the underlying work because the title "relates to its lyrics about freedom, enjoying oneself, and letting go." Mot. 9–10. That is true. The title "Act Bad" has some artistic relevance, and Kenyatta never argues otherwise.

That does not end the inquiry, however. At the second step of the <u>Rogers</u> test, the relevant question is whether the defendants' use of the mark "is misleading in the sense that it induces members of the public to believe [the work] was prepared or otherwise authorized" by Kenyatta. <u>Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.</u>, 868 F. Supp. 2d 172, 179 (S.D.N.Y. 2012). To satisfy this step, "the finding of likelihood of confusion must be particularly compelling to outweigh the First Amendment interest recognized in <u>Rogers</u>." <u>Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.</u>, 996 F.2d 1366, 1378 (2d Cir. 1993). Although "[t]he factors considered by the Court" at the second step of <u>Rogers</u> "are the same as those in <u>Polaroid</u>," "they are applied with a higher bar." <u>Viacom</u>, 2026 WL 861672, at *6.

The defendants' First Amendment argument fails at the second step of the <u>Rogers</u> test, at least at the motion-to-dismiss stage. "Although the 'seriously misleading' test from <u>Rogers</u> leads to a higher standard than the typical <u>Polaroid</u> analysis in cases where it applies, it is still inherently factbound." <u>Id.</u> And for the same reasons Kenyatta has adequately alleged a likelihood of confusion at this stage, "it is not immediately apparent from the face of [the]

---

a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own goods").

complaint that [the defendants] would prevail on [their] First Amendment defense." Id.

iv.

Finally, the defendants argue that Kenyatta's infringement claim fails because he has not adequately pleaded use and ownership of the ACT BAD mark. "Ownership of a trademark requires more than just being the first to invent or register a particular mark; the party claiming trademark rights must have been the first to actually use the mark in the sale of goods or services." Muniz v. Morillo, No. 06-cv-6570, 2008 WL 4219073, at *5 (S.D.N.Y. Sep. 10, 2008) (Sullivan, J.). But "so long as a person is the first to use a particular mark to identify his goods or services in a given market, and so long as that owner continues to make use of the mark, he is entitled to prevent others from using the mark to describe their own goods in that market." ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 147 (2d Cir. 2007).

The defendants contend that Kenyatta has failed to allege that he has continuously used the ACT BAD mark in commerce. See Mot. 12. But they are mistaken. Kenyatta expressly alleges that he "has continuously used the ACT BAD mark in commerce since at least 2020, selling clothing and branded merchandise and promoting entertainment-related services under the ACT BAD name." SAC ¶ 10. Kenyatta alleges that he continued to use the mark both after Combs released his song, Act Bad, and after the USPTO issued his trademark registrations. Id. ¶ 17. Kenyatta is not required to allege more.

14

The defendants argue in the alternative that Kenyatta's registrations are cancelable pursuant to 15 U.S.C. § 1115(b)(1) because Kenyatta "obtained his registrations through fraudulent representations to the [US]PTO." Mot. 13. According to the defendants, Kenyatta applied for his trademark registrations on an "intent to use basis" in the fall of 2021, which they contend meant he was not using the marks when he filed his application. Id. (citing ECF Nos. 76-4 & 76-5). Kenyatta later represented to the USPTO, however, that he first used the alleged marks on January 1, 2021. Id. (citing ECF Nos. 76-8 & 76-9). According to the defendants, that representation "was fraudulent because [Kenyatta] had already represented in the Original Applications that he had not used the Alleged Marks as of September 18 and November 23, 2021." Id. But whether Kenyatta's trademark-registration applications—materials outside the pleadings—contained fraudulent misrepresentations is a factual question that cannot be resolved on a motion to dismiss.

*    *    *

Kenyatta has adequately alleged that he has a valid registered trademark in the phrase "ACT BAD" and that the defendants' use of that mark in commerce is likely to cause confusion. The defendants' arguments to the contrary are either unpersuasive or premature. Their motion to dismiss Kenyatta's trademark-infringement claim under § 32 (Count I) is therefore **denied**.

15

**2.**

Kenyatta also brings a claim for "unfair competition" pursuant to § 43(a) of the Lanham Act. Although he characterizes this claim as one for unfair competition, it is better understood as a claim that the defendants infringed his trademark during the period it was unregistered.

"Section 43(a) prohibits a broader range of practices than does § 32, which applies to registered marks, but it is common ground that § 43(a) protects qualifying unregistered trademarks and that the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." Two Pesos, 505 U.S. at 768. Thus, "[a] claim of trademark infringement, whether brought under 15 U.S.C. § 1114(1) (for infringement of a registered mark) or 15 U.S.C. § 1125(a) (for infringement of rights in a mark by acquired use), is analyzed under the familiar two-prong test described in Gruner Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072 (2d Cir. 1993)." Virgin Enter. Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003). First, the court looks "to see whether the plaintiff's mark merits protection [under the Lanham Act], and second, whether defendant's use of a similar mark is likely to cause consumer confusion." Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 115 (2d Cir. 2006).

The defendants do not meaningfully argue that "ACT BAD" does not merit trademark protection. Instead, they argue that Kenyatta did not use the alleged mark before he registered it and, even if he did, their use of the mark

16

was not likely to cause confusion. See Mot. 11, 14. Both arguments are unpersuasive.

As for usage, the defendants first argue that Kenyatta's allegations of use are conclusory. They contend, for example, that Kenyatta's allegation of "continuous commercial use since 2020 on clothing, merchandise, and entertainment-related promotions" is "devoid of factual detail." Mot. 11. Although Kenyatta's allegations may be sparse, they are not conclusory—they plainly allege that Kenyatta was using the alleged mark in specific kinds of commerce since 2020.

The defendants also argue that Kenyatta's allegations cannot be credited because they contradict representations he made in his registration application to the USPTO, which represented that he had not used the alleged marks when he filed his applications in the fall of 2021. Id. But as explained above, this argument draws on materials outside the pleadings—documents attached to a declaration in support of the defendants' original motion to dismiss, ECF Nos. 76-4, 76-5, 76-6, 76-7, 76-8, 76-9, to challenge the factual accuracy of Kenyatta's pleadings.[4] See supra at 15. At the motion-to-dismiss stage, the Court

_____

[4] Federal courts may take "judicial notice of materials in the public record, such as federal copyright registrations, newspaper articles, and regulatory filings," but only "for the limited purpose of noting what the documents state, rather than to prove the truth of their contents." Hesse v. Godiva Chocolatier, Inc., 463 F. Supp. 3d 453, 462 (S.D.N.Y. 2020); Happier Meditation, Inc. v. Rubin, No. 25-cv-1713, 2025 WL 1928547, at *3 n.5 (S.D.N.Y. July 14, 2025) (noting courts have declined to "disregard well-pled allegations because of alleged contradictions between those allegations and documents that the court held were subject to judicial notice").

must take all factual allegations in the plaintiff's pleadings as true and draw all reasonable inferences in his favor. See McCarthy, 482 F.3d at 191.

The defendants also argue that Kenyatta "admits that he did not formalize sales through Shopify of any products with the Alleged Marks until 2023 when the ACT BAD song was released." Mot. 11. This argument misrepresents Kenyatta's allegations. Kenyatta alleges that he "formalized sales through Shopify in 2023," but notes in the same sentence that the "unbroken timeline of commercial use" began "in 2018 with branding, continuing through personal sales in 2020." SAC ¶ 53. Kenyatta has therefore adequately alleged that he had a valid unregistered mark entitled to protection from at least 2020.

The defendants argue that Kenyatta's § 43(a) claim nonetheless fails because he has not adequately alleged a likelihood of confusion. But this argument fails for the same reason it fails with respect to Kenyatta's trademark-infringement claim under § 32. See supra at 10–11.

Kenyatta has adequately alleged that he has continuously used the mark "ACT BAD" since 2020, that the mark is entitled to trademark protection, and that the defendants' use of the mark in commerce is likely to cause confusion. The defendants' motion to dismiss Kenyatta's trademark-infringement claim under § 43(a) is therefore **denied.**

### B.

Kenyatta also alleges that the defendants' infringing activity constitutes "trademark counterfeiting" in violation of 15 U.S.C. § 1116(d). See SAC ¶¶ 36–

43. Section 32 of the Lanham Act imposes civil liability on "[a]ny person . . . [who] without the consent of the registrant—(a) use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale . . . of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). "[T]he Lanham Act does not provide for a separate cause of action for counterfeiting; rather, it provides for specific kinds of relief for trademark infringement claims based on the sale of counterfeit goods." Rovio Ent., Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 n.2 (S.D.N.Y. 2015). "Thus, the notion of a 'counterfeit' claim is somewhat of a misnomer, as 'counterfeiting is merely an aggravated form of infringement.'" Chrome Hearts LLC v. Controse Inc., No. 21-cv-6858, 2023 WL 5049198, at *8 (S.D.N.Y. Aug. 8, 2023). The Lanham Act allows a plaintiff to elect statutory damages when a defendant uses a counterfeit mark. A defendant who uses a counterfeit mark in commerce is liable for statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold." 15 U.S.C. § 1117(c)(1). When the defendant willfully uses a counterfeit mark, the defendant is subject to statutory damages of "not more than $2,000,000 per counterfeit mark per type of goods or services sold." Id. § 1117(c)(2). Alternatively, if the defendant "intentionally us[es] a mark or designation, knowing such mark or designation is a counterfeit," the plaintiff may receive "three times" the amount of profits or its damages, whichever is greater. Id. § 1117(b).

19

The Lanham Act defines a counterfeit as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. The statute does not define the terms "spurious" and "substantially indistinguishable," but case law in the Second Circuit has filled in the gaps. A "spurious mark" is "one that is 'fake' and deceptively suggests an erroneous origin." Tiffany & Co. v. Costco Wholesale Corp., 971 F.3d 74, 95 n.18 (2d Cir. 2020). "To be substantially indistinguishable, two marks must be nearly identical with only minor differences which would not be apparent to an unwary observer." Louis Vuitton Malletier S.A. v. Sunny Merch. Corp., 97 F. Supp. 3d 485, 499 (S.D.N.Y. 2015). "Put another way, the essence of counterfeiting is that the use of the infringing mark seeks to trick the consumer into believing he or she is getting the genuine article, rather than a 'colorable imitation.'" Coty Inc. v. Excell Brands, LLC, 277 F. Supp. 3d 425, 468 (S.D.N.Y. 2017). In determining whether one mark is a counterfeit of another, a court must not view them "in the abstract. Rather, the alleged counterfeit mark must be compared with the registered mark as it appears on actual merchandise to an average purchaser." Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co., No. 12-cv-1416, 2015 WL 4468083, at *2 (S.D.N.Y. July 8, 2015).

The SAC, like the FAC, pleads no nonconclusory allegations suggesting that the defendants' marks are either spurious or substantially indistinguishable from Kenyatta's own marks. Indeed, the exhibits Kenyatta attached to his SAC, which are incorporated by reference into his pleadings, show that the marks he used are somewhat different from those used by the defendants. For

example, Kenyatta attaches a photograph of a pair of pants bearing the phrase "ACT BAD" in all caps above and below a square with a capitalized "AB." SAC, Ex. 14 at 4, ECF No. 109-5. The mark is relatively small and the words "ACT BAD" are side by side both above and below the square. Id. The photographs of the defendants' alleged infringing apparel, by contrast, show clothing with the phrase "ACT BAD" only once in large, prominent type. See SAC, Ex. 5, ECF No. 109-3. There is no box with a capitalized "AB," and the word "ACT" is stacked on top of "BAD." Id. Although the defendants' usage of the phrase in this way may constitute trademark infringement, it is not substantially indistinguishable from the plaintiff's use of his mark. "To establish counterfeiting in the case of a word mark, it cannot be enough that one word used in the allegedly offending mark is the same, with no reference to font, color, typeface, or context." GMA Accessories, Inc. v. BOP, LLC, 765 F. Supp. 2d 457, 472 (S.D.N.Y. 2011), aff'd sub nom., GMA Accessories, Inc. v. Elec. Wonderland, Inc., 558 F. App'x 116 (2d Cir. 2014).

Because Kenyatta has failed to allege that the defendants sought "to trick the consumer into believing he or she [wa]s getting the genuine article, rather than a colorable imitation," Kenyatta I, 2025 WL 2636610, at *6, he has failed plausibly to allege that the defendants' products rise to the level of "counterfeits" within the meaning of the Lanham Act.

## C.

Kenyatta also brings a claim for "willful trademark infringement" in violation of 15 U.S.C. §§ 1114 and 1117(b). See SAC ¶¶ 44–54. Section 32(a), 15 U.S.C. § 1114(1), however, does not create a cause of action for "willful infringement"—as explained above, it provides a cause of action for infringement of a registered trademark. See supra at 7.

Section 1117, by contrast, discusses willfulness and intentional infringement. Section 1117(a) provides that a plaintiff who proves "a willful violation under section 1125(c)"—the provision that covers trademark dilution—may recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a).[5] Section 1117(b) provides treble damages "for any violation of section 1114(1)(a) . . . in a case involving use of a counterfeit mark or designation" if the violation, among other things, consists of "intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark." 15 U.S.C. § 1117(b).

These provisions, however, do not create causes of action—they merely "address[] damages calculations." Allstar Mktg. Grp., LLC v. Allstar Place, No. 21-cv-5856, 2023 WL 1437679, at *5 (S.D.N.Y. Feb. 1, 2023). To recover treble damages under § 1117(b), moreover, Kenyatta must establish that the

---

[5] Section 1117(a) also provides that a plaintiff may recover profits, damages, and costs when the plaintiff proves "a violation of any right of the registrant of a mark registered in the Patent and Trademark Office" or "a violation under section 1125(a) or (d)" of the Lanham Act. Id. Because Kenyatta has plausibly alleged a claim for trademark infringement under § 1125(a), damages under § 1117(a) remain available to him.

defendants used a counterfeit mark. But as explained above, Kenyatta has not plausibly alleged that the defendants' use of his alleged marks rose to the level of counterfeiting. See supra at 18–21. Kenyatta's claim for "willful trademark infringement" is therefore **dismissed**.

### D.

Kenyatta next brings a claim for unjust enrichment under New York law.[6] According to Kenyatta, the defendants were "unjustly enriched by using [his] federally registered trademark to promote their music, merchandise, and brand while diverting financial benefits to Gourick and retaining substantial profits for themselves." SAC ¶ 69.

"To state a claim for unjust enrichment under New York law, a [p]laintiff must show that (1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by [the p]laintiff." Bermudez v. Colgate-Palmolive Co., 667 F. Supp. 3d 24, 44 (S.D.N.Y. 2023).

Kenyatta's renewed claim for unjust enrichment, though now referencing alleged conduct by Gourick, fails for the same reason his earlier unjust-enrichment claim failed: the claim merely duplicates his Lanham Act claim. Under New York law, "a plaintiff may plead unjust enrichment in the alternative, but where an unjust enrichment claim is duplicative of other causes of

---

[6] Kenyatta styles this claim as one for "unjust enrichment/constructive trust," but he never elaborates on what he believes his constructive-trust claim is, and the parties never treat that claim as distinct from the unjust-enrichment claim. See SAC, ¶¶ 63–71.

action, it should be dismissed." Bourbia v. S.C. Johnson & Son, Inc., 375 F. Supp. 3d 454, 466 (S.D.N.Y. 2019). "Unjust enrichment is not a catchall cause of action to be used when others fail" and "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Patellos v. Hello Prods., LLC, 523 F. Supp. 3d 523, 536–37 (S.D.N.Y. 2021) (quoting Corsello v. Verizon N.Y., Inc., 967 N.E.2d 1177, 1185 (N.Y. 2012)). "An unjust enrichment claim is duplicative if it relies on the same conduct that forms the basis of the plaintiff's other claims." Bermudez, 667 F. Supp. 3d at 44.

Although Kenyatta's renewed unjust-enrichment claim now includes allegations about the defendants' purported interactions with Gourick, the claim still rests on the same factual allegations as his Lanham Act claims—that the defendants "have been unjustly enriched by using [Kenyatta's] federally registered trademarks to promote their music, merchandise, and brand." SAC ¶ 69. "[E]ven pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss [when the] plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." Nelson v. MillerCoors, LLC, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017). Kenyatta's unjust-enrichment claim (Count VI) is therefore **dismissed with prejudice.**

### E.

Finally, Kenyatta seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201–202 that any agreement between the defendants and Gourick

24

regarding the "ACT BAD" mark "is void, of no effect, and cannot impair [Kenyatta]'s exclusive ownership of the ACT BAD trademarks." SAC ¶ 61.

"[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). In deciding whether to entertain an action for declaratory judgment, district courts consider: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." Duane Reade, Inc. v. St. Paul Fire & Marine Ins., 411 F.3d 384, 389 (2d Cir. 2005).

Declaratory relief is unwarranted in this case because Kenyatta fails to explain how a declaratory judgment would settle any of the relevant legal issues or finalize the controversy between the parties. Kenyatta never clearly alleges that a contract between Gourick and the defendants exists or how he would be harmed by such a contract. Indeed, Gourick is not even a party in this dispute. To the extent Kenyatta believes declaratory relief would clarify or settle the issue of his ownership of the alleged trademark and the defendants' alleged infringement, that argument is unpersuasive because Kenyatta can litigate those issues through his Lanham Act claims. "Courts generally reject a [Declaratory Judgment Act] claim when other claims in the suit will resolve the same issues." City of Perry v. Procter & Gamble Co., 188 F. Supp. 3d 276, 286 (S.D.N.Y. 2016).

Because Kenyatta has failed to explain how declaratory relief would clarify the legal issues or finalize the controversy in this case, and because the declaratory relief Kenyatta seeks is largely duplicative of his Lanham Act claims, Kenyatta's request for declaratory relief (Count VIII) is **dismissed with prejudice.**

CONCLUSION

The Court has considered all the arguments raised by the parties. If any argument was not specifically addressed, it is either moot or without merit. For the foregoing reasons, defendants' motion to dismiss Counts III (trademark counterfeiting), IV (willful trademark infringement), VI (unjust enrichment/constructive trust), and VIII (declaratory judgment) is **granted**. The defendants' motion to dismiss Counts I (trademark infringement under 15 U.S.C. § 1114) and II (trademark infringement under 15 U.S.C. § 1125(a)) is **denied**.

The Clerk is directed to close ECF No. 112.

**SO ORDERED.**

Dated:    **New York, New York**
         **June 6, 2026**

**John G. Koeltl**
**United States District Judge**